884 F.2d 1152
 Henry DEUTSCHER, Petitioner/Appellant/Cross-Appellee,
v.
Harol WHITLEY, Warden of the Nevada State Prison, and Brian
McKay, Attorney General of the State of Nevada,
Respondents/Appellees/Cross-Appellants.
 Nos. 88-2552, 88-2579.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 10, 1989.
Decided Aug. 31, 1989.
 
 David J. Burman and Stephan R. Illa, Perkins Coie, Seattle, Wash., and Thomas E. Perkins, Carson City, Nev., for petitioner/appellant/cross-appellee.
 Brian McKay, Atty. Gen., and David F. Sarnowski, Supervising Deputy Atty. Gen., Carson City, Nev., for respondents/appellees/cross-appellants.
 Appeal from the United States District Court for the District of Nevada.
 Before SKOPIL, FARRIS and HALL, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Henry Deutscher appeals the district court's dismissal of his petition for a writ of habeas corpus. Deutscher sought habeas corpus relief from a Nevada court's sentence of death. Nevada authorities appeal the district court's refusal to hold a hearing on whether Deutscher's petition was an abuse of the writ of habeas corpus. We reverse the district court's dismissal of Deutscher's petition and remand with instructions to grant the writ unless Deutscher is resentenced within a reasonable time.
 
 FACTS
 
 2
 In 1977, a Nevada jury convicted Deutscher of first degree murder and of robbery without the use of a weapon. After a separate hearing, the same jury sentenced Deutscher to die. Witnesses at trial testified that the victim had been strangled, beaten, and bitten, prior to suffering a fatal skull fracture.
 
 
 3
 Two potential jurors were excluded from Deutscher's jury because of their views on the death penalty. Both jurors said they would not impose the death penalty under any circumstances.
 
 
 4
 During the penalty phase of the trial, the court instructed the jury to impose the death penalty unless the mitigating circumstances outweighed the aggravating circumstances. The court instructed the jury as to three possible aggravating factors: (1) prior conviction of a felony involving use or threat of violence; (2) murder during an attempted sexual assault; and (3) murder involving "torture, depravity of mind, or the mutilation of the victim." The jury found all three of these aggravating factors.
 
 
 5
 During both the guilt phase and the penalty phase, Deutscher was represented by Herbert Ahlswede. Ahlswede did not call any witnesses at the penalty phase hearing. Although Ahlswede made a tactical decision not to pursue an insanity defense during the guilt phase, he did not consider using psychological evidence during the penalty phase. Nor did Ahlswede investigate Deutscher's past psychiatric treatment or family background. Investigation would have revealed that Deutscher was born substantially premature, that he had been diagnosed as mentally ill and treated for mental illness, and that he had sought, but was not given, psychiatric care for uncontrollable violent outbursts. Dr. O'Gorman, a psychiatrist who examined Deutscher near the time of the murder, testified during a state post-conviction hearing that Deutscher's history was consistent with a mental disorder characterized by episodes of uncontrollable violence.
 
 
 6
 Ahlswede did present a closing argument at the penalty phase hearing but referred to only one mitigating factor: that Deutscher killed while under the influence of an extreme mental disturbance. Ahlswede argued that such a brutal murder could only have been the product of a diseased mind.
 
 
 7
 The Nevada Supreme Court affirmed Deutscher's conviction and sentence. Deutscher v. State, 95 Nev. 669, 601 P.2d 407 (1979). Ahlswede filed a habeas corpus petition on Deutscher's behalf in the United States District Court for the District of Nevada. The court directed Deutscher to submit four unexhausted issues to the state courts. Following exhaustion of those issues, the district court dismissed the petition.
 
 
 8
 Deutscher appealed to this court, and present counsel was substituted for Ahlswede. Present counsel determined that a number of federal issues were not presented by Ahlswede during post-conviction proceedings and asked us to remand the case to state court to allow the new issues to be raised. We denied remand and affirmed dismissal of the petition. Ahlswede v. Wolff, 720 F.2d 1108 (9th Cir.1983), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 155 (1984).
 
 
 9
 Deutscher, through present counsel, then litigated his additional claims in state court. The state trial court denied relief, and the Nevada Supreme Court affirmed. Deutscher v. Warden, Nevada State Prison, 102 Nev. 388, 724 P.2d 213 (1986). The Nevada court held on the merits that Deutscher was not deprived of effective assistance of counsel. Id., 724 P.2d at 214. The court held that Deutscher's other assignments of error were barred by procedural default. The court held that Deutscher could not show good cause for failing to raise his claims within one year of the resolution of his direct appeal and failing to raise his claims in his first petition for post-conviction relief. Id. (citing Nev.Rev.Stat. Secs. 177.315(3) and 177.375(2)).
 
 
 10
 Deutscher again petitioned for habeas corpus. The petition set forth the following claims:
 
 
 11
 1. Deutscher was deprived of effective assistance of counsel.
 
 
 12
 2. Deutscher was sentenced to death without a finding of intent to commit murder.
 
 
 13
 3. The prosecutor's argument was improper.
 
 
 14
 4. Deutscher was sentenced to death based on the "torture, depravity of mind, or mutilation" aggravating circumstance.
 
 
 15
 5. The state used a concurrent felony both to support a felony murder conviction and as an aggravating circumstance.
 
 
 16
 6. The trial court failed to instruct the jury that the prosecution must prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances.
 
 
 17
 7. Nevada improperly discriminates in imposing the death penalty.
 
 
 18
 8. Prospective jurors were improperly excluded.
 
 
 19
 9. The Nevada Supreme Court violated due process by failing to conduct a proper proportionality review.
 
 
 20
 10. Prejudicial evidence of prior bad acts was improperly admitted.
 
 
 21
 The United States District Court held that Deutscher was barred by unexcused procedural default from raising counts two, three, five, six, seven, nine, and ten. Deutscher v. Whitley, 663 F.Supp. 793, 800-01 (D.Nev.), reconsid. denied, 671 F.Supp. 1264, 1267 (D.Nev.1987). The court rejected counts one, four, and eight on the merits. Deutscher v. Whitley, 682 F.Supp. 1098 (D.Nev.1988).
 
 I. STANDARD OF REVIEW
 
 22
 We review de novo a district court's grant or denial of habeas corpus relief. McKenzie v. Risley, 842 F.2d 1525, 1531 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). We review for abuse of discretion the district court's decision not to dismiss the petition as an abuse of the writ. See Harris v. Pulley, 852 F.2d 1546, 1561 (9th Cir.1988). A state trial court's determination of juror bias is presumed correct under 28 U.S.C. Sec. 2254(d). Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). All other issues presented by this appeal are issues of law or mixed legal-factual issues. We review these issues de novo. See United States v. McConney, 728 F.2d 1195, 1200-1205 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 II. ABUSE OF THE WRIT
 
 23
 The state contends that the district court erred by failing to require Deutscher to prove in an evidentiary hearing that he had not abused the writ by bringing a successive habeas corpus petition. 28 U.S.C. Sec. 2254, Rule 9(b) provides that:
 
 
 24
 A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted abuse of the writ.
 
 
 25
 In Harris v. Pulley, we set forth a three-part test for determining whether a successive petition is an abuse of the writ under rule 9(b):Previously unadjudicated claims must be decided on the merits unless (1) the petitioner has made a conscious decision deliberately to withhold them, (2) is pursuing "needless piecemeal litigation," or (3) has raised the claims only to "vex, harass, or delay."
 
 
 26
 852 F.2d at 1572 (quoting Richmond v. Ricketts, 774 F.2d 957, 961 (9th Cir.1985)). In Harris, previous counsel failed to make a claim, not for any tactical reason, but "merely because he missed it." 852 F.2d at 1572. We held that because counsel had not made a conscious decision to withhold claims, engage in piecemeal litigation, vex, harass, or delay, the successive petition was not an abuse of the writ. Deutscher's previous counsel similarly made no conscious decision to withhold claims. The claims simply did not occur to counsel. The district court correctly held that Deutscher's petition was not an abuse of the writ.
 
 III. PROCEDURAL DEFAULT
 
 27
 The district court held that counts two, three, five, six, seven, nine, and ten were barred by procedural default. Deutscher claims this holding was error. The state argues that all of Deutscher's claims should have been rejected because of Deutscher's procedural default in failing to raise the claims in the first state post-conviction proceeding, see Nev.Rev.Stat. 177.315(3), and in failing to file his petition for state post-conviction relief within one year of final resolution of his direct appeal. See Nev.Rev.Stat. 177.375(2).
 
 
 28
 A state prisoner barred by procedural default from litigating a claim in state court may not litigate that claim in a habeas corpus proceeding unless he can show cause for and actual prejudice from the default. Engle v. Isaac, 456 U.S. 107, 110, 102 S.Ct. 1558, 1563, 71 L.Ed.2d 783 (1982) (citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).
 
 
 29
 Whether there is cause for procedural default will "ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Deutscher attempts to demonstrate cause for his procedural default by showing either that his counsel's failure to raise each claim deprived him of effective assistance of counsel or that the claims were unavailable at the time they should have been raised. Either showing is sufficient to establish cause. Id.
 
 
 30
 Ineffective assistance of counsel is sufficient cause to excuse procedural default. "[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." Id. An ineffective assistance of counsel claim has two components.
 
 
 31
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.
 
 
 32
 Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because actual prejudice is an aspect of ineffective assistance of counsel, a defendant who proves ineffective assistance need not make any additional showing of prejudice to overcome procedural default.
 
 
 33
 Cause also exists when the claim is novel in that it had "no reasonable basis in existing law" at the time of the procedural default. Reed v. Ross, 468 U.S. 1, 15, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). But "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). To overcome procedural default, a defendant who demonstrates that his claim was unavailable at the time it should have been raised must also show that he was prejudiced by his counsel's failure to raise the claim. See Engle v. Isaac, 456 U.S. at 110, 102 S.Ct. at 1563.
 
 A. Count One: Ineffective Assistance
 
 34
 This claim is not subject to procedural default because the Nevada Supreme Court reached the merits. See Wainwright v. Sykes, 433 U.S. at 87, 97 S.Ct. at 2506; Deutscher v. Warden, Nevada State Prison, 724 P.2d at 214 (reaching the merits of Deutscher's ineffective assistance claim).
 
 B. Count Two: No Finding of Intent
 
 35
 The court instructed the jury that, under Nevada's felony murder statute, it could convict without finding that Deutscher intended to kill the victim. Deutscher contends that unintentional murder is an insufficient offense to justify imposition of the death penalty.
 
 
 36
 Deutscher's reasons for failing to raise this claim are not sufficient cause for procedural default. Deutscher's counsel was unaware of this claim. The mere fact that counsel failed to recognize the factual or legal basis of a claim, however, is not cause for default. Murray v. Carrier, 477 U.S. at 486-87, 106 S.Ct. at 2644-45. Although Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), held, prior to resolution of Deutscher's appeal, that the death penalty is a disproportional penalty for rape, it was not until Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that the Supreme Court questioned imposition of the death penalty in felony murder cases. Given the state of the law at the time, counsel's failure to raise the claim was not outside the "wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's failure also may not have been prejudicial. See Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (holding that the death penalty could be constitutionally imposed against a defendant who neither intended to kill nor actually killed but who was recklessly indifferent to human life).
 
 
 37
 Novelty of this claim is also insufficient cause for procedural default. The claim that a sentence was disproportional to the crime was available when Deutscher appealed. See Weems v. United States, 217 U.S. 349, 371, 30 S.Ct. 544, 550, 54 L.Ed. 793 (1910); Coker, 433 U.S. at 596, 97 S.Ct. at 2868.
 
 C. Count Three: Improper Argument
 
 38
 Deutscher claims that the prosecution misstated the law and prevented the jury from considering mitigating evidence by saying "what you voluntarily take into your system isn't any defense."
 
 
 39
 Although Deutscher's counsel was unaware of the claim, this unawareness was not egregious enough to be ineffective assistance. Nor did prejudice result from failure to raise the claim. A prosecutor's argument does not violate the Constitution unless it renders the defendant's trial "so fundamentally unfair as to deny him due process." Donnelly v. DeChristoforo, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). A misstatement of the law can deny due process, but reversal is not warranted unless the misstatement prejudiced the hearing. United States v. Becker, 720 F.2d 1033, 1036 (9th Cir.1983). See also Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988).
 
 
 40
 Deutscher's contention that this claim of improper argument was unavailable in 1977 also lacks merit. See, e.g., DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431; U.S. v. Martinez, 514 F.2d 334, 343 (9th Cir.1975).
 
 
 41
 D. Count Four: Torture, Depravity of Mind, or Mutilation
 
 
 42
 Procedural default does not apply to this claim because the claim was properly raised in state court.
 
 
 43
 E. Count Five: Double Counting of Concurrent Felony
 
 
 44
 Deutscher contends that the trial court erred in allowing the jury to use a concurrent felony both to convict him of felony murder and as an aggravating circumstance for imposition of the death penalty.
 
 
 45
 Failure to raise this issue was not prejudicial. See Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (holding that use of the same circumstance as both a guilt phase element and an aggravating circumstance is constitutional as long as the class of death eligible persons is genuinely narrowed).
 
 F. Count Six: Sentencing Standard
 
 46
 Deutscher contends that the court erroneously instructed the jury to impose the death sentence unless mitigating factors outweighed aggravating circumstances.
 
 
 47
 As with other claims, Deutscher admits this was a developing issue at the time of his direct appeal. Because of this, Deutscher's counsel was not ineffective for failing to raise the claim. That the issue was "developing" also indicates that the claim was available.
 
 G. Count Seven: Discrimination
 
 48
 Deutscher contends that the death penalty was improperly imposed against him because the penalty is discriminatorily imposed against poor persons, males, and those convicted of killing white women. Deutscher was not prejudiced by his counsel's failure to raise this claim. See McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987) (holding that statistical bias in imposition of the death penalty does not mandate reversal of individual death sentences).
 
 
 49
 H. Count Eight: Exclusion of Prospective Jurors
 
 
 50
 Deutscher contends that jurors were improperly excluded from his jury despite their willingness to impose the death penalty in the proper circumstances. Deutscher was not prejudiced by his counsel's failure to raise this claim. If the claim had been brought, a reviewing court would have affirmed.
 
 
 51
 A juror may be excluded when the juror's scruples against the death penalty would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Gray v. Mississippi, 481 U.S. 648, 658, 107 S.Ct. 2045, 2051, 95 L.Ed.2d 622 (1987) (quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)). Juror bias is a factual finding entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d). Wainwright v. Witt, 469 U.S. at 428-29, 105 S.Ct. at 854-55. Thus, the question before a reviewing court is not whether the court agrees with the trial court's findings, but whether those findings are fairly supported by the record. Id. at 434, 105 S.Ct. at 857 (citing Marshall v. Lonberger, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983)).
 
 
 52
 The trial court's finding that jurors Gossard and Norris were properly excluded is supported by the record. Both jurors said during voir dire that they could not impose the death penalty under any circumstances.
 
 Q. (Mr. Ahlswede)
 
 53
 So you are saying that you could never under any circumstances at any time impose a death penalty on an individual, no matter how awful the crime was?
 
 A. (Juror Gossard)
 
 54
 I never been able to since a few things happened in my life. I just--I just couldn't do it.
 
 
 55
 * * *
 
 
 56
 * * *
 
 Q. (Mr. Ahlswede)
 
 57
 Do you feel that you could never under any circumstances send anyone to the gas chamber?
 
 A. (Juror Norris)
 
 58
 No, I could never.
 
 
 59
 The district court incorrectly found that Deutscher's counsel rendered ineffective assistance by failing to assert improper exclusion of jurors on appeal. Because Deutscher was not prejudiced by his counsel's failure to raise this claim, Deutscher's claim on this issue is barred by procedural default.
 
 
 60
 I. Count Nine: Improper Proportionality Review
 
 
 61
 Deutscher contends the Nevada Supreme Court failed to properly conduct the proportionality review required by Nevada's death penalty statute and thus deprived Deutscher of a liberty interest without due process. Deutscher was not prejudiced by his procedural default. See Pulley v. Harris, 465 U.S. 37, 50-51, 104 S.Ct. 871, 879-80, 79 L.Ed.2d 29 (1984) (holding that the Constitution does not require proportionality review).
 
 
 62
 J. Count Ten: Prejudicial Evidence Introduced at Sentencing
 
 
 63
 Deutscher argues that the trial court violated due process during the penalty phase hearing by allowing the state to prove a prior sexual assault conviction by testimony of the victim and arresting officer. This claim was available to counsel. No case decided since Deutscher's appeal has significantly changed the type of evidence that can be presented during the penalty phase. Proving that introduction of evidence violated due process is extraordinarily difficult. See Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir.1986) (holding that to violate due process, evidence must be so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived the defendant of fundamental fairness). Given the small likelihood of success, counsel's decision not to raise the claim was within the broad parameters of reasonably effective assistance.
 
 IV. INEFFECTIVE ASSISTANCE
 
 64
 Deutscher argues that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment. Deutscher's ineffective assistance claims fall into two categories: first, Deutscher claims that counsel failed to investigate and present mitigating evidence at the penalty phase hearing; second, Deutscher claims that counsel failed to present meritorious claims on appeal. Because Deutscher also claims that ineffective assistance on appeal was cause for his procedural defaults, Deutscher's claims of ineffective assistance on appeal are addressed in the preceding section.
 
 
 65
 Deutscher claims that his counsel's failure to investigate and present mitigating evidence at the penalty phase was ineffective assistance. We evaluate Deutscher's claim under the two-part Strickland test. First, Deutscher must show that his counsel's performance was deficient. Second, Deutscher must show that his counsel's deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
 
 
 66
 In evaluating Deutscher's counsel's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 689, 104 S.Ct. at 2065 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). We do not look at counsel's performance through the distorting lenses of hindsight, but rather examine counsel's performance according to what was reasonable at the time. Id.
 
 
 67
 We agree with the district court that Deutscher's counsel's performance was defective. Counsel's sole mitigation argument was that Deutscher must have had some sort of mental problem. Yet counsel did not even consider presenting evidence of Deutscher's mental problems or any other mitigating evidence at the penalty phase hearing. Counsel himself admitted at the state trial court hearing on this issue that this aspect of Deutscher's representation was deficient. Counsel made no tactical decision not to investigate Deutscher's possible mental impairment. He simply failed to do so.
 
 
 68
 We do not hold that failure to present mitigating evidence at a capital sentencing hearing is always defective performance. In certain cases, counsel might reasonably decide that mitigation evidence would present more problems than it would solve. In Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Court rejected a claim of ineffective assistance where counsel failed to present evidence in mitigation at a capital sentencing hearing. The Court noted:[T]here are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself. Any attempt to portray petitioner as a nonviolent man would have opened the door for the State to rebut with evidence of petitioner's prior convictions.... For that reason, after consultation with petitioner, defense counsel rejected use of psychiatric testimony.
 
 
 69
 Id. at 186, 106 S.Ct. at 2474. Counsel in this case did not make a reasoned decision not to use psychiatric testimony. Nor did he decide to rely on a simple plea for mercy. Rather, counsel decided to defend on the basis of petitioner's psychiatric problems, but did not even consider investigating evidence which would have bolstered that defense. Counsel could not have chosen to avoid psychiatric evidence because of potentially damaging rebuttal testimony. Counsel did not even know what evidence was available.
 
 
 70
 Ahlswede had a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. He did neither. In Evans v. Lewis, 855 F.2d 631 (9th Cir.1988), we considered a similar case. Counsel knew his client had some history of mental problems, but "conducted no investigation to ascertain the extent of any possible mental impairment," id. at 636, and did not present any mitigating evidence at his client's death penalty hearing. "Under these circumstances, counsel's failure to pursue the possibility of establishing ... mental instability constituted deficient performance." Id. at 637. This case is virtually identical. Counsel knew from the report of Dr. O'Gorman that Deutscher had been hospitalized for mental problems in the past, but counsel completely failed to pursue the possibility of presenting mitigating evidence of mental impairment. Deutscher's counsel's performance was deficient.
 
 
 71
 The district court rejected Deutscher's ineffective assistance claim, however, holding that Deutscher had not shown prejudice as required by the second part of the Strickland test. To show that prejudice resulted from his counsel's defective performance, Deutscher must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. We cannot say with confidence that the jury's sentencing decision would have been the same in this case had Deutscher's counsel presented the available mitigating evidence.
 
 
 72
 The penalty phase hearing Deutscher received consisted of extensive testimony about an incident in 1967 in which Deutscher sexually assaulted a young woman. This testimony included the woman's own emotional and graphic description of the attack. This was followed by an extremely persuasive closing argument in which the prosecutor detailed five aggravating circumstances and then demonstrated the complete absence of any of seven mitigating circumstances. Next, Deutscher's counsel admitted there was "no excuse" for what Deutscher had done, admitted the presence of the aggravating circumstances detailed by the prosecutor, and argued in mitigation only that "such a sick mind is not to be punished but rather to be pitied." Finally, the prosecutor accurately pointed out the complete lack of any evidence of mitigation--"as far as insanity, the first thing you hear about it is an argument here on penalty. Don't you believe if he had a doctor that would say he was insane, which he is entitled to, that you would have had him on the stand here?"
 
 
 73
 Having that doctor on the stand might have made a difference. Dr. O'Gorman, a competent, experienced psychiatrist who examined Deutscher in 1977, would have testified that premature children such as Deutscher can develop a mental disorder characterized by episodes of uncontrollable violence that are often accompanied by a temporary loss of memory. He would have testified that stress and alcohol can make such an outburst more likely and that Deutscher's story that he had blacked out was consistent with the symptoms of this disorder. Mental health records would have shown diagnoses of schizophrenia, pathological intoxication, and organic brain damage; commitments to mental institutions; and a history of good behavior in institutional settings. The records would have also shown that Deutscher had asked for but had not received treatment for episodes of uncontrollable violence. Deutscher's family would have testified that Deutscher suffered fetal injury and was born prematurely due to a beating his mother received from his father, that Deutscher's father beat and occasionally seriously injured Deutscher, and that Deutscher was often beaten while attempting to protect his mother and sisters from his father.
 
 
 74
 In finding that counsel's deficiencies were not prejudicial, the district court pointed to testimony by Dr. Master disputing Dr. O'Gorman's conclusions and the previous diagnoses. Dr. Master testified that Deutscher was not mentally ill, but rather had no social conscience. The court speculated that the jury might have considered this lack of social conscience testimony as further aggravation. Dr. Master's testimony might have been successfully rebutted. Dr. Master did not take into account Deutscher's premature birth, fetal injury, or childhood beatings. Dr. Master admitted that Deutscher would do well in an institutional setting. In addition, Dr. Master might have been impeached by evidence that Dr. Master has been an overzealous prosecution witness in other murder trials. Moreover, much of Dr. Master's testimony would have been inadmissible at the penalty phase hearing. Dr. Master was appointed by the trial court to determine Deutscher's competence to stand trial. When "a psychiatrist designated by the trial court to conduct a neutral competency examination" goes beyond simply reporting on competence and testifies at the penalty phase, he becomes like "an agent of the State recounting unwarned statements made in a post-arrest custodial setting," and use of his testimony could violate the Fifth Amendment. Estelle v. Smith, 451 U.S. 454, 467, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359 (1981).
 
 
 75
 Although we do not presume prejudice in a case such as this, we must be especially cautious in protecting a defendant's right to effective counsel at a capital sentencing hearing. The Constitution prohibits imposition of the death penalty without adequate consideration of factors which might evoke mercy. California v. Brown, 479 U.S. 538, 554, 107 S.Ct. 837, 846, 93 L.Ed.2d 934 (1987). "Consideration of such evidence is a 'constitutionally indispensable part of the process of inflicting the penalty of death' " Id. (quoting Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality)). The Supreme Court has consistently held that "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.' " Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (quoting Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982)). See also, Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 1824-25, 95 L.Ed.2d 347 (1987). Deutscher's state appointed lawyer failed to present any mitigation evidence at all. A finding that Deutscher was not prejudiced by this failure would deny Deutscher the chance to ever have a jury, Nevada's death penalty arbiter, fully consider mitigating evidence in his favor. Instead, secondhand bits and pieces of mitigation evidence would be analyzed and rebutted based only on speculation about what might have happened if dozens of important variables had been different. Allowing the death penalty to be imposed in that context would fall far short of the constitutional mark. We therefore reverse and remand for resentencing so that a jury can properly weigh mitigating and aggravating circumstances before deciding Deutscher's fate.
 
 
 76
 In our efforts to protect the constitutional right to "effective assistance of counsel" recognized in McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970), we have often treated "ineffective assistance of counsel" as if it were a defense available to one accused of a crime. It is not a defense. Rather, it is an indictment of counsel that results in relief to one who is unfortunate enough to have been represented incompetently. Because of our treatment of the issue, defense lawyers may be encouraged to leave behind a trail of mistakes in a hopeless case so that there is some possibility of relief on ineffective assistance grounds in a case in which no relief is legally available to the accused. We cannot and do not accuse counsel of such reprehensible conduct. We must therefore conclude that the incompetent act is performed because the lawyer is not competent to represent those accused of crime. Courts should not tolerate incompetence so flagrant as to be ineffective assistance. Nor should courts tolerate deliberate mistakes which amount to both a dereliction of duty and an egregious lack of candor toward the courts. In the case of deliberate mistakes, it may become necessary for this court to act to prevent and deter such conduct. It is within our supervisory powers, for example, to revoke the privilege of practice before this court when an attorney is found "guilty of conduct unbecoming a member of the bar of the court...." Fed.R.App.P. 46(b). In appropriate cases, we will not hesitate to do so.
 
 
 77
 V. NEVADA'S TORTURE, DEPRAVITY, MUTILATION AGGRAVATING CIRCUMSTANCE
 
 
 78
 Deutscher argues that the aggravating circumstance of torture, depravity of mind, or mutilation of the victim was unconstitutionally vague as applied to him. Nevada must not allow arbitrary and capricious imposition of the death penalty. See Godfrey v. Georgia, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). The Supreme Court has "insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988). Because the jury was instructed that it could find this aggravating circumstance if torture, depravity of mind, or mutilation occurred, each of the three elements must be evaluated.[1] The torture and mutilation aspects of this circumstance are sufficiently clear and objective to satisfy the requirements of Godfrey. The cutting off or destruction of a portion of the body (mutilation) is an objective difference between a murder by mutilation and any other murder. See Godfrey, 446 U.S. at 428, 100 S.Ct. at 1764. Intent to cause cruel pain and suffering for sadistic purposes is a similarly objective and reviewable distinction.
 
 
 79
 The depravity of mind instruction, however, fails to meet Godfrey requirements. There is nothing in the definition of depravity of mind that restrains arbitrary imposition of the death penalty. See Godfrey, 446 U.S. at 428, 100 S.Ct. at 1764. The depravity instruction in this case, although it contains more words, is no more capable of channeling discretion than the "especially heinous, atrocious, or cruel" instruction rejected in Maynard or the "outrageously or wantonly vile, horrible or inhuman" instruction in Godfrey. See also Adamson v. Ricketts, 865 F.2d 1011, 1029 (9th Cir.1988) (en banc) (holding Arizona "especially cruel, heinous, and depraved" aggravating circumstance unconstitutional as applied).
 
 
 80
 Because the jury found two aggravating circumstances besides the torture, depravity of mind, or mutilation circumstance, however, Neuschafer v. Whitley, 816 F.2d 1390, 1393 (9th Cir.1987) (citing Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)), would require affirmance as to this issue had we not decided to reverse on the basis of Deutscher's ineffective assistance claim.
 
 CONCLUSION
 
 81
 The case is remanded to the district court for entry of an order granting the writ of habeas corpus, unless the state resentences Deutscher within a reasonable time. All of Deutscher's claims except counts one and four are barred by procedural default. The district court erred only in its determination that Deutscher was not prejudiced by his counsel's deficient performance in failing to investigate or present any mitigating evidence. Because Deutscher was denied his right to effective assistance of counsel at sentencing, his 1977 sentence must not be carried out.
 
 
 82
 REVERSED and REMANDED.
 
 
 
 [1]
 The relevant instructions were:
 Instruction No. 21: the essential elements of murder by means of torture are: (1) the act or acts which caused the death must involve a high degree of probability of death, and (2) the defendant must commit such act or acts with the intent to cause cruel pain and suffering for the purpose of revenge, persuasion, or for any other sadistic purpose.
 The crime of murder by torture does not necessarily require any proof that the defendant intended to kill the deceased, nor does it necessarily require any proof that the deceased suffered pain.
 Instruction No. 22: the condition of mind described as depravity of mind is characterized by an inherent deficiency of moral sense and rectitude. It consists of evil, corrupt and perverted intent which is devoid of regard for human dignity and which is indifferent to human life. It is a state of mind outrageously, wantonly vile, horrible or inhuman.
 Instruction No. 23: You are instructed that the term "mutilate" means to cut off or permanently destroy a limb or essential part of the body or to cut off or alter radically so as to make imperfect.