946 F.2d 1443
 Henry DEUTSCHER, Petitioner/Appellant/Cross-Appellee,
v.
Harol WHITLEY, Warden of the Nevada State Prison, and Brian
McKay, Attorney General of the State of Nevada,
Respondents / Appellees / Cross-Appellants.
 Nos. 88-2552, 88-2579.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 15, 1991.
 
 David J. Burman, Perkins Coie, Seattle, Wash., for Henry Deutscher.
 Before SKOPIL, FARRIS and HALL, Circuit Judges.
 
 
 1
 In Deutscher v. Whitley, 884 F.2d 1152 (9th Cir.1989), we granted Deutscher's petition for writ of habeas corpus because he was represented by constitutionally deficient counsel at sentencing and was prejudiced by his counsel's failure to present mitigating evidence and to challenge an unconstitutional aggravating factor. By order of the United States Supreme Court, we review this ruling in light of McCleskey v. Zant, 499 U.S. ----, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), and Lewis v. Jeffers, 497 U.S. ----, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).
 
 
 2
 The government sufficiently pleaded abuse of the writ. McCleskey, 499 U.S. at ----, 111 S.Ct. at 1470. We determine whether Deutscher is excused from this default by the same standard used to determine whether to excuse state procedural defaults. Id. 111 S.Ct. at 1468.
 
 
 3
 Deutscher is unable to establish cause for his failure to raise either the ineffective assistance of counsel or the invalid aggravating circumstance claim in his previous petition. Ineffective assistance of counsel establishes cause for default only if the Sixth Amendment guarantees a right to counsel at the proceeding in which the default occurred. Coleman v. Thompson, 499 U.S. ----, ----, 111 S.Ct. 2546, 2566-68, 115 L.Ed.2d 640 (1991). Deutscher did not have a constitutional right to counsel in his first habeas appeal. His failure to raise valid constitutional claims in the original habeas appeal is attributable to the continued deficient representation of his counsel, but that does not establish cause for his default. Id.
 
 
 4
 Although Deutscher has not shown cause for his default, we retain authority to issue the writ if the petition "implicat[es] a fundamental miscarriage of justice." McCleskey, 499 U.S. at ----, 111 S.Ct. at 1470. Where a constitutional violation has more probably than not resulted in a capital sentence for one who should not have been sentenced to death, issuance of the writ is necessary to ensure that a fundamental miscarriage of justice does not occur. See Dugger v. Adams, 489 U.S. 401, 412 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); Smith v. Murray, 477 U.S. 527, 537-39, 106 S.Ct. 2661, 2667-69, 91 L.Ed.2d 434 (1986); Stokes v. Armontrout, 893 F.2d 152, 156 (8th Cir.1990).
 
 
 5
 The Supreme Court has not defined the standard by which the "fundamental miscarriage of justice" exception applies to the sentencing phase of a capital case. Adams, 489 U.S. at 412 n. 6, 109 S.Ct. at 1217 n. 6. The Eighth and Eleventh Circuits have addressed the issue and reached different conclusions. In the Eighth Circuit, the exception applies to the penalty phase of a capital case " 'if the federal constitutional error alleged probably resulted in a verdict of death against one whom the jury would otherwise have sentenced to life imprisonment.' " Stokes, 893 F.2d 152, 156 (8th Cir.1990) (quoting Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir.1989). The Eleventh Circuit has adopted a more restrictive approach:
 
 
 6
 The sentenced defendant must demonstrate not merely that the error affected the sentencing outcome, but that the error resulted in a sentencing outcome for which the defendant is not eligible by virtue of his conduct.... That is, but for the alleged constitutional error, the sentencing body could not have found any aggravating factors and thus the petitioner was ineligible for the death penalty.
 
 
 7
 Johnson v. Singletary, 938 F.2d 1166, 1183 (11th Cir.1991) (en banc).
 
 
 8
 Fundamental fairness, the hallmark of our Constitution, compels us to follow the standard recognized by the Eighth Circuit. The approach adopted by the Eleventh Circuit fails to fulfill the stated purpose of the fundamental miscarriage of justice exception. We recognize that the Constitution does not require that the trial in a capital case be perfect. But in a civilized society, we cannot ignore constitutional violations that have so infected a capital case that an individual has been sentenced to die who, but for constitutional errors during sentencing, would likely not be put to death. The Eleventh Circuit requires not only that a defendant would not have been sentenced to death; it requires that the defendant could not have been sentenced to death. This approach offends the Constitution and fails to comport with Supreme Court precedent.
 
 
 9
 The death penalty escapes condemnation as cruel and unusual punishment only if its imposition is "at once consistent and principled but also humane and sensible to the uniqueness of the individual." Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982). The requirements of consistent application and fairness to the accused necessitate that a sentence of death be based on an informed and accurate decision. See Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 1986, 100 L.Ed.2d 575 (1988) ("The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (White, J., concurring in judgment)). Thus, in determining whether the fundamental miscarriage of justice exception applied in Smith v. Murray, the Supreme Court considered whether the defendant presented a "substantial claim that [constitutional] error undermined the accuracy of the ... sentencing determination." 477 U.S. at 539, 106 S.Ct. at 2668. It is not enough that an error "is by its nature the kind of error that might have affected the accuracy of a death sentence." Adams, 489 U.S. at 412 n. 6, 109 S.Ct. at 1217 n. 6 (emphasis added). Rather, the defendant must make a "colorable showing" that constitutional error, in fact, undermined the accuracy of the sentence. Smith, 477 U.S. at 538-39, 106 S.Ct. at 2668-69. Whether such a showing has been made "must be determined by reference to all probative evidence." Kuhlmann v. Wilson, 477 U.S. 436, 454-55 n. 17, 106 S.Ct. 2616, 2627-28 n. 17, 91 L.Ed.2d 364 (1986) (emphasis in original).
 
 
 10
 Nevada law requires jurors to weigh mitigating and aggravating circumstances in determining whether a death sentence is warranted. The existence of a valid aggravating circumstance, standing alone, does not mandate death. It is the presence of a valid aggravating circumstance that invokes the "individualized capital sentencing doctrine" and requires that valid mitigating factors be considered. See Harmelin v. Michigan, 499 U.S. ----, 111 S.Ct. 2680, 2701-02, 115 L.Ed.2d 836 (1991). Constitutional errors can skew this required balancing to an extent that a "colorable showing" can be made that a defendant would not have received the death penalty despite the underlying presence of a valid aggravating circumstance.
 
 
 11
 We do not ignore the discretion accorded the sentencing authority in weighing aggravating and mitigating circumstances. However, if, as a consequence of constitutional error, (1) the sentencing body never considered evidence critical to the exercise of its discretion and (2) it is more probable than not that the death penalty would not have been imposed had the evidence been considered, the writ must issue. To allow such a sentence to stand would violate the precepts of the Eighth and Fourteenth Amendments and belie principles of fundamental fairness.
 
 
 12
 Efforts to eliminate abuse of the writ are long overdue. But three factors must be foremost in our review. First, the "abuse of the writ" is a federal procedural doctrine based on principles of equity. McCleskey, 499 U.S. at ----, 111 S.Ct. at 1468-69. Second, this is a death sentence:
 
 
 13
 "The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity."
 
 
 14
 Harmelin v. Michigan, 499 U.S. at ----, 111 S.Ct. at 2702 (1991) (quoting Furman v. Georgia, 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring)). Third, though resentencing implicates concerns of finality, judicial economy, and comity, a resentencing proceeding is a far less onerous task than a retrial. Fundamental fairness requires that the equitable doctrine of abuse of the writ yield when constitutional errors at sentencing undermine the propriety of a death sentence.
 
 
 15
 To establish a fundamental miscarriage of justice at sentencing, a defendant must establish that constitutional error substantially undermined the accuracy of the capital sentencing determination. See Smith v. Murray, 477 U.S. 527, 538-39, 106 S.Ct. 2661, 2668-69, 91 L.Ed.2d 434 (1986). This requires a showing that constitutional error infected the sentencing process to such a degree that it is more probable than not that, but for constitutional error, the sentence of death would not have been imposed.
 
 
 16
 Because Deutscher's counsel was constitutionally deficient, no mitigating evidence was presented at sentencing. Had Deutscher been competently represented, the sentencing jury would have considered mental health records of Deutscher showing diagnoses of scizophrenia, pathological intoxication, and organic brain damage, commitments to mental institutions, and a history of good behavior in institutional settings. The records would also have shown that Deutscher had asked for, but had not received, treatment for episodes of uncontrollable violence. Deutscher's family would have testified that Deutscher suffered fetal injury and was born prematurely due to a beating his mother received from his father, that Deutscher's father beat and occasionally seriously injured Deutscher, and that Deutscher was often beaten while trying to protect his mother and sisters. Dr. O'Gorman, an experienced psychiatrist who examined Deutscher in 1977, would have testified that premature children, such as Deutscher, can develop a mental disorder characterized by episodes of uncontrollable violence often accompanied by a temporary loss of memory and that Deutscher's story was consistent with the symptoms of this disorder.
 
 
 17
 The Supreme Court has repeatedly stated that the Constitution prohibits imposition of the death penalty without adequate consideration of factors that might evoke mercy. See, e.g., California v. Brown, 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987); Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 1824-25, 95 L.Ed.2d 347 (1987); Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). In this case, no mitigating evidence was provided to the jurors even though the available mitigating evidence suggests that Deutscher suffers from a congenital mental illness that responds well to institutional treatment. Responsibility for the failure to present this evidence to the jury is imputed to the State through the ineffective assistance of Deutscher's Sixth Amendment counsel. Coleman, 499 U.S. at ----, 111 S.Ct. at 2567.
 
 
 18
 Counsel's failure to present mitigating evidence was compounded by his failure to challenge the "depravity of mind" aggravating factor applied at Deutscher's sentencing. The definition of depravity of mind given at Deutscher's sentencing did not restrain arbitrary imposition of the death penalty. See Godfrey v. Georgia, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). The depravity instruction, although it contained more words, suffered some of the defects of the "especially heinous, atrocious, or cruel" instruction rejected in Maynard v. Cartwright, 486 U.S. 356, 363-64, 108 S.Ct. 1853, 1859, 100 L.Ed.2d 372 (1988), and the "outrageously or wantonly vile, horrible or inhuman" rejected in Godfrey. It failed to include objective indicia analogous to the instructions approved in Walton v. Arizona, --- U.S. ----, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). The depravity of mind instruction was unconstitutionally vague as applied to Deutscher. Nothing in Lewis v. Jeffers, 497 U.S. ----, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), leads to a contrary conclusion.
 
 
 19
 Judge Hall argues in dissent that the fact that "one of the three aggravating factors found by the jury was unconstitutionally vague does nothing to undermine the jury's finding that two other aggravating circumstances were applicable to Deutscher." Infra at 1449-1450. It is the compounding of constitutional errors at Deutscher's sentencing, however, that infected the sentencing process to such a degree that the risk of Deutscher being wrongly put to death requires issuance of the writ in order to prevent a fundamental miscarriage of justice. Nevada law requires the jury to balance mitigating and aggravating circumstances in determining whether a death sentence is warranted. The jury cannot fulfill this responsibility when a proper mitigating factor is not considered and an improper aggravating factor is considered. A new balancing between mitigating and aggravating factors is necessary. See Creech v. Arave, 928 F.2d 1481, 1492-93 (9th Cir.1991).
 
 
 20
 In directing that abuse of the writ be governed by the procedural default standard, the Supreme Court did not intend to turn death penalty cases into a deadly game of procedures. The McCleskey standard recognizes the need to prevent wasteful, repetitive habeas petitions designed only to delay. However, a civilized society cannot take the life of a defendant who presents a valid claim that his death sentence was entered in a proceeding that precluded a proper, informed exercise of discretion. Unlike the violation in McCleskey,[1] the failings that Deutscher asks us to consider go directly to the propriety of his death sentence. The Constitution will not permit Deutscher's life to be taken on the basis of a sentencing proceeding in which constitutionally inadequate counsel failed to present available mitigating evidence and did not challenge a constitutionally infirm aggravating factor. These errors so undermine the foundation for Deutscher's death sentence that the cornerstone principles of Eighth Amendment jurisprudence require that the sentence be set aside.
 
 
 21
 We remand to the district court for entry of an order granting the writ of habeas corpus unless the state resentences Deutscher within a reasonable time.
 
 
 22
 REVERSED and REMANDED.
 
 
 23
 CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting:
 
 
 24
 While I agree with the standard used by the majority to determine whether a petitioner is "actually innocent" of the death penalty, I cannot agree with the majority's application of that test to the facts of this case. I must, therefore, respectfully dissent.
 
 
 25
 * Because this case demonstrates the different mode of analysis we are to undertake once we determine that a subsequent federal habeas corpus petition is abusive, some background is in order. Deutscher was convicted of murder and sentenced to death by a Nevada state court in 1977. After direct and collateral appeals in state and federal courts, Deutscher filed his second federal habeas petition. This panel reviewed that petition in Deutscher v. Whitley, 884 F.2d 1152 (9th Cir.1989) (Deutscher I ).
 
 
 26
 In Deutscher I, we erroneously held that Deutscher could raise claims for the first time in his second federal habeas petition because he had not "made a conscious decision to withhold claims, engage in piecemeal litigation, vex, harass, or delay." Id. at 1155-56. We found that two of Deutscher's claims had merit. First, we found that Deutscher was denied effective assistance of counsel because Deutscher's lawyer failed to introduce any mitigating evidence at sentencing, despite its availability. Id. at 1159-61. We found this omission, along with counsel's inept closing argument, to be a result of incompetence rather than of trial tactics. Id. at 1160. Because we found a "reasonable probability" that the result would have been different but for counsel's errors at sentencing, we held that Deutscher should be resentenced. Id. at 1163.
 
 
 27
 Second, we found in Deutscher I that one of the statutory aggravating circumstances presented to Deutscher's sentencing jury was unconstitutionally vague. The judge instructed the jury at Deutscher's sentencing that any one of three aggravating circumstances would qualify Deutscher for the death penalty: (1) prior conviction of a felony involving the use or threatened use of violence; (2) murder during an attempted sexual assault; or (3) murder involving "torture, depravity of mind, or the mutilation of the victim." Id. at 1154. The jury found all three of these aggravating factors. Id. We held that the "depravity of mind" instruction was unconstitutionally vague because it lacked objective factors which would restrain arbitrary imposition of the death penalty. Id. at 1162.[1]
 
 
 28
 The Supreme Court directed us to reconsider our decision in light of McCleskey v. Zant, --- U.S. ----, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). I now turn to that task.
 
 II
 
 29
 The majority correctly holds that Deutscher's second federal habeas petition is an abuse of the writ under McCleskey because he cannot show cause for failing to raise the claims in his first federal habeas petition. The majority errs, however, by holding that Deutscher can nonetheless press his claims on habeas because "a fundamental miscarriage of justice would result from a failure to entertain the claim." McCleskey, 111 S.Ct. at 1470. The "fundamental miscarriage of justice" exception to abuse of the writ is reserved for a petitioner who not only alleges a constitutional error but also makes a showing of factual innocence. Id. at 1471. The exception "serves as 'an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty.' " Id. (quoting Stone v. Powell, 428 U.S. 465, 492-93, 96 S.Ct. 3037, 3051-52, 49 L.Ed.2d 1067 (1976)).
 
 
 30
 In Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986), the Supreme Court held that the "fundamental miscarriage" exception applies to the sentencing determination in addition to the adjudication of guilt. The Court has recognized that deciding whether a petitioner is "innocent" of a death sentence is problematic, and application of the rule in specific cases is difficult. See Dugger v. Adams, 489 U.S. 401, 412 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); Smith, 477 U.S. at 537, 106 S.Ct. at 2667. The Court has, however, clearly stated that this exception is reserved for the "extraordinary" case. Adams, 489 U.S. at 412 n. 6, 109 S.Ct. at 1217 n. 6.
 
 
 31
 I agree with the majority that the test applied by the Eleventh Circuit in Johnson v. Singletary, 938 F.2d 1166, 1183 (11th Cir.1991) (en banc), is too stingy to guard against miscarriages of justice. Deutscher has not convinced me, however, that errors at his sentencing " 'probably resulted in a verdict of death against one whom the jury would otherwise have sentenced to life imprisonment.' " Stokes v. Armontrout, 893 F.2d 152, 156 (8th Cir.1989) (quoting Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir.1989)).
 
 
 32
 I believe that the majority focuses too heavily on whether Deutscher's sentencing was procedurally perfect rather than whether he has shown that a new jury probably would not sentence him to death. The Supreme Court has cautioned that "[d]emonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is 'actually innocent' of the sentence he or she received." Adams, 489 U.S. at 412 n. 6, 109 S.Ct. at 1217 n. 6 (emphasis added). A "colorable showing," Smith, 477 U.S. at 538, 106 S.Ct. at 2668, that "a constitutional violation undermined the accuracy of the sentencing decision" is simply not enough. Adams, 489 U.S. at 412 n. 6, 109 S.Ct. at 1217 n. 6.[2] Instead, Deutscher must convince this court that a jury on resentencing probably will not sentence him to death.
 
 
 33
 I cannot honestly believe that Deutscher will not again be sentenced to death by the next jury he faces. The murder for which Deutscher was convicted was grisly and barbaric:
 
 
 34
 On the morning of August 16, 1977, the body of Darlene Joyce Miller, 37, was discovered on the desert road.... She was nude except for a blouse and bra that had been pulled open around her shoulders. Her legs were spread apart and there was smeared blood between her upper thighs. She had superficial lacerations and abrasions on her breasts and abdomen which experts testified represented bite marks. Her neck, face and head were severely bruised, bearing extensive abrasive-type injuries. Her head had a large depression skull fracture two and three-fourths inches in diameter caused by a crushing or blunt type object. A trail of dripped blood led from the crime scene to [a nearby highway].
 
 
 35
 . . . . .
 
 
 36
 A forensic pathologist testified as to the extent of injuries which the victim incurred, finding no evidence of recent sexual intercourse. The expert did testify that the victim had been strangled and that all the injuries were inflicted while the victim was still alive with the blow causing the two and three-fourths inch diameter hole to the left side of her head being the last and probable "lethal" injury.
 
 
 37
 Deutscher v. State, 95 Nev. 669, 601 P.2d 407 (1979).
 
 
 38
 That one of the three aggravating factors found by the jury was unconstitutionally vague does nothing to undermine the jury's finding that two other aggravating circumstances were applicable to Deutscher. Moreover, I believe that the new jury will again find the "depravity" circumstance after it is appropriately limited by the trial judge's instructions to restrain arbitrary imposition of the death penalty.
 
 
 39
 Nor do I believe that a new jury probably will not again sentence Deutscher to death when it hears the mitigating evidence Deutscher now proposes to present. Our previous holding that the presentation of the mitigating evidence might have changed the result was based on our analysis of Deutscher's ineffective assistance of counsel claim. Thus, our conclusion was based on our view that "[w]e cannot say with confidence that the jury's sentencing decision would have been the same in this case had Deutscher's counsel presented the available mitigating evidence." Deutscher I, 884 F.2d at 1160. Deutscher had only to convince us that there was a "reasonable probability" that the mitigating evidence would have an effect on the outcome of his sentencing. Id. But, in light of McCleskey, we have now learned that Deutscher is barred from pursuing his ineffective assistance claim in this, his second, federal habeas petition. The burden of persuasion is now on Deutscher and he has failed to carry it.
 
 
 40
 McCleskey and other abuse of the writ decisions teach us that once a petitioner is barred from habeas relief due to abuse of the writ, he may find relief in the federal courts only if he demonstrates that he is actually innocent of either the crime or the death penalty. While Deutscher's claims would be cognizable were they not procedurally barred, they do not suffice to render him "actually innocent" of the death penalty. Because I believe that the jury on remand probably will, contrary to the majority's view, again condemn Deutscher to death, I respectfully dissent.
 
 
 
 [1]
 McCleskey concerned a Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), violation
 
 
 [1]
 The Supreme Court directed that we reconsider this holding in light of Lewis v. Jeffers, --- U.S. ----, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Lewis held that a statutory aggravating circumstance for murder committed in an "especially heinous, cruel or depraved manner" was not unconstitutionally vague as long as the trial judge gives sufficiently specific and objective instructions to the sentencing jury. Since the trial judge instructed Deutscher's sentencing jury in the bare language of the statute, Lewis is inapplicable. See Walton v. Arizona, --- U.S. ----, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990) ("[I]n both Maynard and Godfrey the defendant was sentenced by a jury and the jury either was instructed only in the bare terms of the relevant statute or in terms nearly as vague. Neither jury was given a constitutional limiting definition of the challenged aggravating factor.") (citations omitted)
 
 
 [2]
 Although the Court in McCleskey used the "colorable showing" language, it was merely quoting the plurality decision in Kuhlmann v. Wilson, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986). In Smith, decided on the very same day as Kuhlmann, a majority of the Court plainly rejected the argument that a "colorable showing" of error would excuse procedural defaults in state court. Smith, 477 U.S. at 538, 106 S.Ct. at 2668. Moreover, the Court in Adams made clear that a standard allowing evasion of the cause and prejudice standard for errors that "might" have affected the accuracy of a death sentence is too lenient to excuse an abuse of the writ. Adams, 489 U.S. at 412 n. 6, 109 S.Ct. at 1217 n. 6