**Don Eugene HARDING, Petitioner,**

v.

**Samuel A. LEWIS, et al., Respondents.**

**No. CIV 92–209 TUC–ACM.**

United States District Court,
D. Arizona.

April 3, 1992.

Denise Young, James J. Belanger, Arizona Capital Representation Project, Arizona State University College of Law, Tempe, Ariz., for petitioner.

Jack Roberts, Asst. Atty. Gen., Dept. of Law, Phoenix, Ariz., for respondents.

## AMENDED ORDER

MARQUEZ, Senior District Judge.

Petitioner Donald Eugene Harding, presently in state custody on death row at the Arizona State Prison Complex, Florence, Arizona, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 27, 1992. Harding additionally filed a Motion for Stay of Execution, currently scheduled at 12:05 a.m. on April 6, 1992, Motion for Evidentiary Hearing, Motion to Require State to Answer Petition for Writ of Habeas Corpus, Motion for Leave to Conduct Discovery and a Request for Admissions.

Harding's petition raises the following eight grounds for habeas corpus relief: 1) Harding was denied effective assistance of counsel; 2) Harding's rights were violated by the imposition of the death sentence based on inaccurate, unreliable information; 3) newly discovered evidence requires reversal of Harding's conviction and death sentence as a matter of due process; 4) Harding did not make a valid waiver of his right to counsel; 5) Harding was unconstitutionally convicted and sentenced to death based on inaccurate and unreliable mental health evaluations; 6) Harding was unconstitutionally denied access to independent and confidential necessary expert psychiatric assistance; 7) Harding was denied due process and right to counsel when a critical portion of his trial was conducted in his absence; and 8) Harding's death sentence must be reversed because it rests on an invalid prior conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence that Harding brutally murdered two men was overwhelming. The facts are lengthy and are set forth in this Court's Memorandum Decision of Harding's first federal habeas petition, *Harding v. Lewis*, 641 F.Supp. 979 (D.Ariz. 1986), and are also set forth in the Appendix to the Ninth Circuit's decision affirming this Court. *Harding v. Lewis*, 834 F.2d 853 (9th Cir.1987). The following sets forth the procedural background.

On January 28, 1980, the Pima County Grand Jury indicted Donald Eugene Harding on two counts of first-degree murder, two counts of armed robbery, two counts of kidnapping, and theft of property valued at over $1,000.

For two years while awaiting trial, Harding was represented by public defender Dan Cooper. During this period, Cooper filed thirty motions seeking, inter alia, to exclude evidence, to delay the trial, and to develop an insanity defense. When these efforts proved futile, as anticipated by Cooper, he advised Harding that his only chance was to represent himself with the hope of injecting fundamental error in the trial, which would result in reversal of his convictions on appeal.

On March 15, 1982, Harding asked the state court to allow him to represent himself on an unrelated charge of deadly assault by a prisoner. Judge Gin, the state trial judge in both the assault case and the present case, questioned Harding about his education, his experiences with the criminal justice system, and the reasons for his wanting to defend himself. Judge Gin also warned Harding of the serious penalty he faced if convicted. The trial court allowed Harding to represent himself on the assault charge and appointed Cooper as advisory counsel at Harding's request.

On March 23, 1982, Cooper requested that he be allowed to withdraw from the present case because Harding wanted to act as his own attorney. Judge Gin reviewed Harding's statements about his education and his familiarity with criminal procedure and warned him that he might receive the death penalty if convicted of the murders. Judge Gin, however, apparently did not specifically refer to the difficulties

faced by a lay person representing himself. Harding confirmed the judge's review of his background and stated he was absolutely certain he wanted to represent himself. Judge Gin denied the request when Harding refused to sign the waiver of counsel form because it included the appointment of Cooper as advisory counsel.

Cooper apparently told Harding that Judge Gin would relieve Cooper as counsel only if Harding threatened him. Harding told Cooper to consider himself "threatened."

On April 15, 1982, Harding renewed his request to represent himself. Cooper filed a motion to withdraw for ethical reasons at approximately the same time. A hearing was held with Cooper before the state court presiding judge, Judge Druke, in chambers and off the record. Judge Druke informed Judge Gin that Harding had told Cooper that Harding intended to commit a crime and Harding had refused to waive any potential conflict of interest that might arise during Cooper's continued representation. Judge Gin discussed with Harding his desire to represent himself and whether Harding would have to accept advisory counsel. The judge then permitted Harding to represent himself but appointed Cooper as advisory counsel, stating that "the problem of threats" would persist no matter who represented Harding or acted as advisory counsel. Cooper continued to pursue some of the pretrial motions he had filed and served as advisory counsel throughout the trial, which began on April 20, 1982. Harding was convicted by a Pima County Superior Court jury of all counts named in the indictment on April 27, 1982.

On May 26, 1982, an aggravation hearing was held before the trial court. Harding refused to present mitigating evidence. The court found four aggravating and no mitigating circumstances. Pursuant to A.R.S. § 13–703(C), the court sentenced Harding to death for the two counts of first-degree murder, two consecutive 21–year terms for robbery, two consecutive 21–year terms for kidnapping and a consecutive five-year term for theft of property. (R.T. Vol. 8, 173–77.)

On September 6, 1983, the Arizona Supreme Court affirmed the convictions and sentences on appeal. *State v. Harding*, 137 Ariz. 278, 670 P.2d 383 (1983). The court denied a petition for rehearing.

The United States Supreme Court denied certiorari on January 10, 1984. 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984).

On March 20, 1984, Harding filed for post-conviction relief under Rule 32 of Arizona's Rules of Criminal Procedure. William Lane had represented him on direct appeal and, at his request, the appellate court appointed him as Harding's attorney for the post-conviction petition. His requested stay of execution was granted March 23, 1984 by the trial court pending the outcome of the Rule 32 hearing. The trial court granted an evidentiary hearing on the sole issue of whether Harding was denied a fair trial or effective assistance of counsel due to the inadequacy of the advice and representation given by appointed counsel, Dan Cooper. Evidentiary hearings on this issue were held on August 7 and October 30, 1984.

On December 28, 1984, after making extensive Findings of Fact and Conclusions of Law, the trial court denied post-conviction relief and dissolved the stay of execution on January 3, 1985. On March 20, 1985, a petition for reconsideration was denied. The Arizona Supreme Court denied review of the post-conviction proceedings on June 5, 1985; and on June 12, 1985, scheduled Harding's execution for August 7, 1985.

Harding filed his first petition for writ of habeas corpus in this Court and a motion for stay of execution, which was granted on August 2, 1985.

On October 16, 1985, Harding's appointed counsel, Francisco Leon, filed an amended petition for writ of habeas corpus, which was denied on April 30, 1986. *Harding v. Lewis*, 641 F.Supp. 979 (D.Ariz.1986).

The Ninth Circuit affirmed this Court's denial of all relief on December 21, 1987. *Harding v. Lewis*, 834 F.2d 853 (9th Cir. 1987).

On October 3, 1988, the United States Supreme Court denied certiorari. 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988).

The Arizona Supreme Court issued a warrant of execution on December 22, 1988, scheduling Harding's execution for February 22, 1989.

On February 2, 1989, Harding filed his second state petition for post-conviction relief. (Respondents' Exhibit H at 626, filed on November 5, 1991, state record in second post-conviction proceeding.) The Arizona Supreme Court stayed Harding's execution on February 8, 1989. Because of the Ninth Circuit's opinion in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988), the state appellate court stayed proceedings on March 3, 1989.

After the United States Supreme Court denied certiorari in *Adamson*, the state appellate court lifted the stay on October 5, 1990 and granted Harding leave to file an amended petition for post-conviction relief.

On November 7, 1990, Harding filed an amended petition for post-conviction relief. (Respondents' Exhibits A–D at 1–367, state record in the second post-conviction proceeding.) The state contended that Harding had waived all claims for failure to assert them on appeal or in the first petition for post-conviction relief. (Respondents' Exhibit I at 795–812, state record in the second post-conviction proceeding.) On May 22, 1991, the trial court dismissed the petition and issued Findings of Fact and Conclusions of Law holding every issue precluded and dismissed the second petition and request for an evidentiary hearing. (Respondents' Exhibit E at 440–43, state record in the second post-conviction proceeding.) The trial court denied Harding's motion for rehearing.

On August 19, 1991, Harding petitioned the Arizona Supreme Court for review. On October 24, 1991, the Arizona Supreme Court granted the state's request to issue a warrant of execution and scheduled Harding's execution for January 3, 1992.

On November 13, 1991, Harding's defense counsel filed a petition for writ of habeas corpus in the Arizona Supreme Court. (Respondents' Exhibits J & K, second post-conviction proceeding.)

On December 18, 1991, the Arizona Supreme Court stayed the pending execution "to fully consider all of the medical, psychological and psychiatric exhibits submitted." (Petitioner's Exhibit 1.)

On March 18, 1992, the Arizona Supreme Court denied Harding's motion to remand for an evidentiary hearing, petition for review of the post conviction petition, petition for writ of habeas corpus and various pending motions. (Petitioner's Exhibit 2.)

On March 19, 1992, the Arizona Supreme Court issued a warrant scheduling Harding's execution for April 6, 1992.

On March 27, 1992, Harding filed this second Petition for Writ of Habeas Corpus with this Court.

## II.

## ANALYSIS

The crux of Harding's second habeas petition now before this Court centers around three assertions: (1) trial counsel's ineffective assistance by the failure to investigate sentencing defenses and present mitigating evidence, including Harding's documented history of organic brain dysfunction;[1] (2) post-conviction counsel's ineffectiveness by failing to investigate potential defenses to the first-degree murder convictions or mitigation evidence calling for a sentence less than death;[2] and (3) newly-discovered medical evidence that Harding has suffered throughout his life from organic brain dysfunction that causes severe behavioral consequences and substantially impairs his judgment, decision-making ability and ability to inhibit impulses.[3]

Harding proffers the opinions of medical experts by affidavit which show that the organic brain dysfunction, from which Harding has suffered throughout his life,

---

1. Petition for Writ of Habeas Corpus, page 6.

2. *Id.* at page 8.

3. *Id.* at pages 8–9.

causes severe behavioral consequences,[4] and substantially impairs his judgment, decision-making ability and the ability to inhibit impulses.[5]

Harding further contends that the newly discovered evidence shows that his organic brain dysfunction and severe depression impaired his ability to make reasoned choices among his legal alternatives at all times relevant to this case, prevented him from assisting prior counsel in identifying mitigation evidence, and further disproves the medical diagnosis of antisocial personality which the state relied upon at Harding's capital sentencing.[6]

Harding argues that the constitutional violations raised in his successive petition, whether in claims newly raised or raised in the previous proceeding, must be considered because the failure to do so would be a fundamental miscarriage of justice.[7] Prior habeas counsel made no additional request for expert assistance to explore additional claims, because at the time this first petition was filed, federal habeas corpus law provided that any new or unexhausted claims based on new evidence could be brought in a later petition. Harding offers the affidavit of Frank Leon, appointed counsel for his first federal habeas petition, in support of this position.[8]

At the time Harding filed his first federal petition for habeas relief in 1985, *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which held that when a federal district court is presented with a petition containing both exhausted and unexhausted claims, the court must either dismiss the petition, forcing the petitioner to: (1) return to the state courts to exhaust the claims; or to (2) amend the federal petition to present only the exhausted claims to the court, was already in effect. A petitioner choosing the latter alternative under *Rose* would risk forfeiting future consideration of his unexhausted claims in federal court. Under Rule 9(b) governing

§ 2254 cases, a district court could dismiss subsequent petitions if it found that the failure of the petitioner to assert those new grounds constituted an abuse of the writ. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); 28 U.S.C. § 2254 foll. 9(b) (1988).

Even if it can be shown that Harding's failure to raise successive claims in his first federal petition were attributable to ineffective representation, Harding does not have a constitutional right to counsel in his habeas appeal, and therefore cannot establish cause for default. *Deutscher v. Whitley*, 946 F.2d 1443, 1444 (9th Cir.1991), *Coleman v. Thompson*, —— U.S. ——, ——, 111 S.Ct. 2546, 2566–68, 115 L.Ed.2d 640 (1991).

In his amended petition for writ of habeas corpus, filed in this Court on October 16, 1985, Harding raised the following issues:

1. Dan Cooper's advice constituted ineffective assistance of counsel.

2. The trial court erred by failing to properly determine whether Harding knowingly and intelligently waived his right to counsel.

3. The trial court did not properly determine Harding's competency to waive his right to counsel.

4. Admission of certain photographs at trial violated Harding's due process rights.

5. The trial court should have recused the prosecutor.

6. The trial court erred by not suppressing two statements Harding made.

This Court considered and rejected each one of these claims on the merits. *Harding v. Lewis*, 641 F.Supp. 979. On appeal to the Ninth Circuit, Frank Leon abandoned issues 4, 5 and 6. The Ninth Circuit affirmed this Court's ruling on issues 1, 2 and 3. *Harding v. Lewis*, 834 F.2d 853,

---

4. *Id.*, Exhibit 9, Affidavit of Dr. Goodman. Exhibit 10, Affidavit of Dr. Jonathan Pincus. Exhibit 11, Affidavit of Dr. Otto Bendheim.

5. *Id.*, Affidavit of Dr. Randall Price, Exhibit 12.

6. *Id.* at pages 9–10.

7. *Id.* at page 33, ¶ 113.

8. *Id.*, Exhibit 8.

*cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151.

■ An abuse of the writ may occur when a petitioner presents claims previously adjudicated, Rule 9(b), Rules Governing Habeas Corpus Proceedings, 28 U.S.C. § 2254, or when a petitioner presents new claims which could have been presented in his first habeas corpus petition. In *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

■ If a new claim is raised in a second or successive habeas petition, the Court may review that claim on the merits only if the petitioner's failure to raise the claim in the prior petition was not due to inexcusable neglect. *Sawyer v. Whitley,* 945 F.2d 812, 816 (5th Cir.1991); *McCleskey,* 111 S.Ct. at 1454. The state bears the burden of pleading abuse of the writ. Once the state has met its burden of pleading abuse of the writ, the petitioner must disprove that he has abused the writ by showing cause for failure to bring the claim in the first federal habeas petition, and actual prejudice that results from the error that gave rise to the claim. *Id.* Harding must show cause for failure to bring the claim in the first federal habeas petition, and actual prejudice that results from the errors that gave rise to these claims in order to disprove that he has abused the writ. *McCleskey,* 111 S.Ct. at 1470. The Court must further examine "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *Id.* at 1472.

The Supreme Court in *McCleskey* specifically held that, "[o]mission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Id.*

A. Claim 1 and Claim 4

■ Harding's first and fourth claims are closely related and will be discussed together. Both claims were alleged in the first federal habeas petition filed and re-

jected by this Court and the Ninth Circuit Court of Appeals.

Harding's first claim argues that he was denied the right to representation by competent counsel at the trial and penalty phase of his capital trial in violation of his Fifth, Sixth and Fourteenth Amendment rights. His fourth claim alleges that Harding did not make a valid waiver of his right to counsel.

Harding alleges that trial counsel's failure to discover and present available mental health evidence, that he could not have premeditated the crime and could not have conformed his conduct to the requirements of the law, prejudiced Harding. Furthermore, trial counsel's failure to investigate potential mental health evidence, to establish mitigating evidence of Harding's background and mental dysfunction, and failure to challenge the evidence presented by the state to support aggravating circumstances, prejudiced Harding and deprived him of his constitutional rights.

Harding argues that no defense to the first-degree murder charges and death sentence existed because of post-conviction counsel's failure to investigate. As a result, counsel appointed to represent Harding in the first federal habeas corpus proceedings in this Court had no facts available to establish the prejudice Harding suffered when trial counsel advised him to represent himself.[9]

Rule 9(b) of the Rules governing § 2254 cases provides that a second or successive petition may be dismissed if the judge finds that the petition fails to allege new or different grounds for relief and the prior determination was on the merits. *Harris v. Vasquez,* 949 F.2d 1497, 1511 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); 28 U.S.C. § 2254 foll. Rule 9(b).

The claims that Harding was denied effective assistance of counsel and that he did not make a valid waiver of his right to counsel were dealt with exhaustively when this Court ruled on the first habeas petition, *Harding,* 641 F.Supp. 979, and by the

**9.** *Id.* at page 31 ¶ 111.3.

Ninth Circuit when it affirmed this Court's denial of relief on these claims. *Harding*, 834 F.2d 853. The Court points out that if Harding is permitted to succeed in this successive petition, he will have accomplished what he and advisory counsel started out to do from the beginning; i.e. attempt to inject fundamental error by having Harding represent himself. The Ninth Circuit agreed with this Court that Harding understood the risks of self-representation.

The Ninth Circuit specifically stated:

Harding was adamant in his demands to represent himself. Cooper and Harding apparently concocted the story of threats to force Judge Gin to permit Cooper to withdraw. Unfortunately, the object of their scheme was not original:

Quoting a previous decision, the Ninth Circuit elaborated:

'It appears that Romero, by his own deliberate and intentional actions, seeks to insert built-in error in these proceedings, so as to postpone a final inquiry into his failure to comply with the tax laws of this country. *Courts are established at public expense to try issues, not to play games.*' (emphasis added)

*Harding*, 834 F.2d at 858 (quoting *United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir.1981)).

Although our review of waiver of counsel in a capital case, by its very nature, must be more searching, we cannot countenance deliberate efforts to inject error. As the state court found when it denied Harding's motion for post-conviction relief, his waiver was an act of desperation done by a man with the intelligence to know he was in a situation requiring desperate measures. He knew he could be sentenced to death if convicted. He knew he would in all likelihood be convicted. We conclude that Harding made his waiver knowingly and intelligently.

*Harding*, 834 F.2d at 858–859.

Because Harding raises claims that this Court has already considered in his previous habeas corpus petition, the merits of the successive claim can be considered or

reviewed only if Harding "supplements his constitutional claim with a colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986); *McCleskey*, 111 S.Ct. at 1470.

If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*McCleskey, supra.*

A 'fundamental miscarriage' implies that the 'constitutional violation has probably resulted in the conviction of one who is actually innocent.'

*Sawyer v. Whitley*, 945 F.2d at 816 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)).

The showing of actual innocence is what "triggers" the Court's authority to consider the merits of abusive claims that fail the cause and prejudice requirement as well as successive claims. *Id.*

Harding has made no showing of factual innocence. Because Harding's first and fourth claims were alleged in the first federal habeas petition and a prior determination was made on the merits, Claims 1 and 4 are hereby dismissed.

**B. Claim 2**

■ Harding's second claim alleges that his due process and Eighth Amendment rights were violated by the imposition of the death sentence based on inaccurate, unreliable information regarding his mental illness and its relationship to his behavior. He alleges that the reported opinions of the Arkansas doctors which formed the basis for the state's sentencing argument "were wrong." [10] Presumably, this refers to information that was contained in the presentence report and the arguments by the state at the time of sentencing. Harding argues that because a sentence based on materially false, unreliable or inaccurate information requires an especially high degree of reliability in the determination that

---

**10.** *Id.* at page 15.

death is the appropriate punishment, he is entitled to a new sentencing based on accurate information about his brain disease and its bearing on the events at issue in this case.

This argument was available to him at the time of the filing of his first federal habeas petition. The state has satisfied its initial burden of pleading abuse of the writ and Harding must disprove that he abused the writ by showing cause for failure to raise the claim in the first federal habeas petition and actual prejudice resulting from errors that gave rise to the claim. *Harris v. Vasquez,* 949 F.2d at 1511; *McCleskey,* 111 S.Ct. at 1468.

The record clearly shows that Harding possessed a sufficient basis to raise this claim at the time of the filing of his first federal petition. Harding has failed to demonstrate cause and, therefore, his second claim must be dismissed.

■ Even if Harding could show cause, he cannot show from the record that the trial court based the imposition of the death penalty on anything except the aggravating circumstances and his refusal to present mitigation. When the trial court announced its special verdict, it made no reference to Harding's mental problems as a basis for the sentence. (R.T. of May 26, 1982 at 175–77.)

There being no showing that constitutional error substantially undermined the accuracy of the sentencing determination, Harding has failed to establish a fundamental miscarriage of justice. *Deutscher v. Whitley,* 946 F.2d at 1446.

## C. Claim 3 and Claim 5

Harding's third and fifth claims are consolidated for purposes of this discussion.

■ In his third claim, Harding alleges that newly discovered evidence requires reversal of his conviction and death sentence as a matter of due process. Harding argues the testimony of Drs. Goodman, Pincus, Bendheim and Price, which shows that his brain dysfunction makes him prone to impulsive behavior and sudden fits of rage,[11] constitutes newly discovered evidence which negates the state's evidence that the crime was premeditated, the grounds upon which Harding was tried.

Harding also sets forth in his third claim the argument that the newly discovered evidence would establish a substantial mitigating circumstance and compels a new sentencing. He further argues that this evidence demonstrates that he was sentenced to death based on inaccurate, unreliable and incomplete facts.

Harding's fifth claim, that he was unconstitutionally convicted and sentenced to death based on inaccurate and unreliable mental health evaluations, is based on the assertion that "[i]f evidence of petitioner's organic brain dysfunction and its behavioral consequences was reasonably available at the time of trial, and if appointed trial counsel was not ineffective for failing to discover and present this medical testimony, then petitioner was denied an accurate and reliable mental health examination by the medical experts obtained to assist him in his capital trial and sentencing."[12] Harding offers by affidavit the testimony of medical experts in support of his assertion that, had his organic brain dysfunction been diagnosed in 1980, evidence of his "impulsive behavior, inability to premeditate the crime or to conform his conduct to the requirements of the law, would have been presented as a defense to the first-degree murder charges and to the death sentence."[13]

The evidence set forth in the affidavits upon which Harding relies, demonstrates that his third and fifth claims were available before trial and therefore, certainly available at the time he filed his first petition for post-conviction relief and first federal habeas corpus petition.

Because of time constraints, the Court has been unable to elaborate as much as it would like on each of the claims, especially the claims including newly discovered evi-

---

11. *Id.,* Exhibits 9, 10, 11 and 12.

12. *Id.* at pages 18–19, ¶ 76.

13. *Id.* at page 20, ¶ 82.

dence. The state has thoroughly addressed this issue in its response and the Court adopts the reasoning as set forth in Respondents' anticipatory opposition.[14] There is a serious inconsistency in Harding's claims regarding the medical testimony. In his second petition for post-conviction relief, Harding admitted that evidence of organic brain dysfunction was available through Drs. Peters and Clements. "Dr. Peters and Dr. Clements would have testified that Harding's illness had rendered his behavior impulsive and beyond his control since earliest childhood, and that it underlay his adult conduct." (Respondents' Exhibit A at 7–9, state record in second post-conviction proceeding.)

This cannot be reconciled with the claim that he did not have sufficient basis to raise the claim at sentencing in 1982, much less in the first habeas petition in 1985.[15]

The record reflects that there was sufficient evidence available at the time of Harding's trial to assert the third and fifth claims alleged in this successive habeas petition. The Court need not consider whether there is actual prejudice to Harding upon his failure to show cause. *McCleskey*, 111 S.Ct. at 1474; *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645.

Failure to raise a claim in an earlier petition may nevertheless be excused, even if the petitioner cannot show cause, if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. *Id.* 111 S.Ct. at 1470.

Harding asserts the constitutional violations raised in his successive petition for writ of habeas corpus, whether in claims newly raised or raised in previous proceedings, "must be considered because the failure to do so would be a fundamental miscarriage of justice."[16]

█ A fundamental miscarriage of justice is shown only in those "extraordinary instances when a constitutional violation

probably has caused the conviction of one innocent of the crime." *Id.*

In presenting a colorable showing of factual innocence to establish a fundamental miscarriage of justice at sentencing, the Ninth Circuit held:

> [A] defendant must establish that constitutional error substantially undermined the accuracy of the capital sentencing determination. *See Smith v. Murray,* 477 U.S. 527, 538–39, 106 S.Ct. 2661, 2668–69, 91 L.Ed.2d 434 (1986). This requires a showing that constitutional error infected the sentencing process to such a degree that it is more probable than not that, but for constitutional error, the sentence of death would not have been imposed.

*Deutscher v. Whitley,* 946 F.2d at 1446.

In the facts before the Court, there is no constitutional error based on the fact that Harding represented himself. As stated earlier in the discussion of Claims 1 and 4, the claims that Harding was denied effective assistance of counsel and that he did not make a valid waiver of his right to counsel were dealt with exhaustively when this Court ruled on the first habeas petition and by the Ninth Circuit when it affirmed this Court's denial of relief on the merits. Therefore, no fundamental miscarriage of justice can be established.

### D. Claim 6

█ Harding alleges in his sixth claim that the trial court unconstitutionally denied access to independent and confidential necessary expert psychiatric assistance needed to prepare his defense. Furthermore, the trial court's order requiring him to fully disclose all mental health reports and requiring court appointed mental health experts to report their findings directly to the court denied him his right to the assistance of a mental health expert in whatever capacity counsel deemed appropriate.

---

**14.** Respondents' Opposition to Motion to Stay the Execution, pages 22—27.

**15.** *Id.* at pages 24, 29 & 30.

**16.** *Id.* at page 33, ¶ 113.

This claim centers on the mental health evidence at issue in Harding's third and fifth claims. Harding argues that the full disclosure requirement of the trial court "effectively blocked" his "earlier access to the substantial mental health evidence presented for the first time in this proceeding," in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights.[17]

Harding argues that to avoid disclosing the reports of the mental health experts, which counsel asked the trial court to appoint to examine him, defense counsel withdrew the request to have Harding examined. Harding additionally argues that defense counsel withdrew the defense of insanity to avoid disclosing the record of the mental health experts who had already examined him.

Harding claims that as an indigent defendant he has a state and federal constitutional right to the assistance of an independent psychiatrist to assist him in the evaluation, preparation and presentation of a defense and that this right includes the right to the assistance of his own competent psychiatric expert whose assistance is not conditioned on automatic full disclosure to the fact finder.

A review of the record demonstrates that Harding was examined by at least five medical doctors who never disclosed the results of any of their examinations to the trial court or to the state. Therefore the Court finds that this unsubstantiated claim has no merit. This claim was also available at the time of the filing of the first federal habeas petition and was not alleged. Therefore, under the standards set forth in *McCleskey*, the Court finds an abuse of the writ and Harding has failed to show cause.

E. Claim 7

 Harding claims he was denied due process and his right to counsel when a critical portion of his trial was conducted in his absence. This claim involves the admission into evidence of approximately 100 photographs of the crime scene and autopsies of the victims. Harding claims that the trial court erred when it admitted the photographs during his absence when he left the courtroom and that the admission of the photographs was not harmless error due to the prejudicial effect.

The alleged prejudicial effect of the photographs was raised in the first petition. The Court denied relief and the claim was abandoned on appeal. Upon the review of Harding's claim raised in his first federal habeas petition, that the Arizona Supreme Court's failure to find that the admission of the gruesome photographs was fundamental error in violation of Harding's right to due process and a fair trial, this Court assumed that several of the photographs were improperly admitted into evidence. *Harding*, 641 F.Supp. at 995. The Court found that the admission of the photographs did not amount to constitutional error, Harding's constitutional rights were not violated by the introduction of the prejudicial photographs, and that Harding received a fair and full trial. *Id.* at 995–996. As to this portion of the claim, the Court finds that Harding fails to allege a new or different ground for relief and that the prior determination was on its merits. *See Harding*, 641 F.Supp. at 994–995. Therefore, this claim must be dismissed. *Harris v. Vasquez*, 949 F.2d at 1511.

 As to the argument that Harding was denied due process and right to counsel when the court admitted the photographs in his absence, the Arizona Supreme Court ruled that he had waived his objection to admission when he "moved to admit them all" before he left the courtroom. *State v. Harding*, 137 Ariz. at 291, 670 P.2d at 396.

This claim was not raised in the first federal habeas petition. If a petitioner raises a new claim in a second or successive habeas petition, this Court may review the merits of the successive claim only if the petitioner's failure to raise the claim in the prior petition was not due to inexcusable neglect. *Sawyer*, 945 F.2d at 816, *McCleskey*, 111 S.Ct. at 1454.

17. *Id.* at page 23.

The state bears the burden of pleading abuse of the writ. Once the state has met its burden of pleading, the petitioner must disprove that he has abused the writ by showing cause for failure to bring the claim in the first federal habeas petition, and actual prejudice that results from the error that gave rise to the claim. *McCleskey*, 111 S.Ct. at 1470.

In order to demonstrate cause, Harding must show that the failure to raise the claim in his first petition was due to some objective external factor such as interference by officials. *Sawyer v. Whitley*, 945 F.2d at 816; *McCleskey*, 111 S.Ct. at 1470 (quoting *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645). The court must examine "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *Sawyer v. Whitley*, 945 F.2d at 816 (quoting *McCleskey*, 111 S.Ct. at 1472). The Court need not consider whether there is actual prejudice to petitioner when he fails to show cause. *McCleskey*, 111 S.Ct. at 1474 (citing *Murray v. Carrier*, 477 U.S. at 494, 106 S.Ct. at 2648).

Because the state court has already ruled on the merits of this claim and it was not raised in the first federal habeas petition, the claim must be dismissed because Harding cannot show cause. It is not necessary for this Court to once again consider the issue of prejudice absent a showing of cause. This Court's ruling in the first habeas petition renders that issue moot. *see Harding*, 641 F.Supp. 979.

F. Claim 8

In his final claim, Harding alleges that his death sentence must be reversed because it rests on an invalid prior conviction in violation of his due process rights. Harding was sentenced to death after the trial court found four aggravating circumstances.

Harding alleges that the statute under which he was convicted, A.R.S. § 13–1206, requires the state to prove beyond a reasonable doubt that an individual in custody committed an assault while using a deadly weapon or a dangerous instrument and that the evidence presented was insufficient. Harding stipulated to the existence of the prior convictions at the death penalty sentencing hearing. (R.T. of May 26, 1982, at 161–163.) The trial court used the stipulated evidence as the basis for finding aggravating circumstances under A.R.S. § 13–703(F)(1) and (2). The Arizona Supreme Court upheld the aggravating circumstances based on the prior conviction. *State v. Harding*, 137 Ariz. at 294, 670 P.2d at 399.

Harding did not raise this claim questioning the validity of the prior conviction either on appeal, his first petition for post-conviction relief or in his first federal habeas corpus petition. The facts and law upon which Harding relies were available at the time of trial. Because he failed to raise them at trial, on appeal, in his first petition for post-conviction relief, or in his first federal habeas petition, Harding has procedurally defaulted and must demonstrate legitimate cause to excuse his default. *McCleskey, supra; Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Even if he could show cause, Harding would not be entitled to any relief on this claim. This Court cannot tell the Arizona courts how to apply state law. *Estelle v. McGuire*, — U.S. —, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Supreme Court cited *Lewis v. Jeffers*, 497 U.S. 764, —, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990), a death penalty case from Arizona, in reaffirming that principle. *Id.* 112 S.Ct. at 475.

The conviction for deadly assault by a prisoner still stands and the record does not show that Harding has ever challenged this conviction in federal court on any ground. Therefore, this claim is dismissed.

This Court having reviewed the state record of Harding's second post-conviction petition, the habeas petition filed in the Arizona Supreme Court and having re-

viewed the entire state record at the time Harding's first federal petition was filed;

IT IS ORDERED AS FOLLOWS:

1. For the reasons set forth herein before, the Petition for Writ of Habeas Corpus is DISMISSED;

2. The Motion for Stay of Execution is DENIED;

3. The Request for a Certificate of Probable Cause is DENIED. A certificate of probable cause implies that the District Court has found that Petitioner made a substantial showing of the denial of a federal right with respect to the claims asserted in the petition, which this Court has not found. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). *Herrera v. Collins,* 954 F.2d 1029 (5th Cir.1992).

4. The Motions for Evidentiary Hearing, to Hire Experts, to Vacate Judgment and to Conduct Discovery are DENIED.