**Nollie Lee MARTIN, Petitioner,**

v.

**Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent.**

**No. 92–8257–CIV.**

United States District Court, S.D. Florida.

May 8, 1992.

Richard H. Burr, III., NAACP Legal Defense Fund, New York City, for petitioner.

Carolyn M. Snurkowski, State Attorney's Office, West Palm Beach, Fla., for respondent.

## MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE has come before the Court on the Petition of Nollie Lee Martin for writ of habeas corpus and Emergency Motion for Stay of Execution, filed with the Court on May 5, 1992.

On April 7, 1992, the Governor of the State of Florida signed a death warrant for the period beginning Tuesday, May 5, 1992 through the following Tuesday, May 12, 1992, pursuant to which Petitioner was scheduled to be executed by the Superintendent of the Florida State Prison on Wednesday, May 6, 1992.

Because Petitioner's Petition for writ of habeas corpus was received by this Court a few hours before his scheduled time of execution, a Stay of Execution pursuant to 28 U.S.C. § 2251 was granted, on May 6, 1992, until further order of this Court. This permitted the parties a full opportunity to be heard on the issues raised by the Petition, and to allow for proper appellate review. The Court heard oral argument on the legal issues raised in this third petition on May 7, 1992.

## I. FACTUAL BACKGROUND

On June 25, 1977, Nollie Lee Martin and Gary Forbes robbed at knifepoint a convenience store clerk, Patricia Greenfield, a nineteen year old college student. After the robbery, the two men kidnapped Patricia Greenfield, drove her to Martin's apartment, blindfolded her, and each man forcibly raped her. The victim, still blindfolded, was assured she would be released in a remote area. After driving her to the vicinity of the Lantana, Florida city dump, Martin took her out of the car and walked her out of the view of Forbes.

Forbes testified that Martin told him, on returning to the car, that Martin's repeated attempts to strangle Patricia Greenfield with a short piece of rope had failed because she kept recovering her breath after each attempted strangulation. Martin then told Forbes that he killed Patricia by stabbing her several times in the throat.

## II. PROCEDURAL HISTORY

Petitioner was tried before a jury in April, 1978 and convicted of first degree murder, kidnapping, rape, and sexual battery. The trial judge followed the jury's recommendation and entered a sentence of death, and three life sentences, on November 13, 1978. The Supreme Court of Florida affirmed the convictions and sentences. *Martin v. State,* 420 So.2d 583 (Fla.1982). Rehearing was denied. *Id.* On direct appeal, the U.S. Supreme Court denied Martin's petition for writ of certiorari. *Martin*

*v. Florida,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983).

Martin subsequently filed a motion for state post-conviction relief under Fla. R.Crim.P. 3.850, which was denied without an evidentiary hearing. The denial was affirmed by the Florida Supreme Court. *Martin v. State,* 455 So.2d 370 (Fla.1984).

Martin then filed his first federal petition for a writ of habeas corpus in this Court, which was denied. *See Martin v. Wainwright,* No. 84–8426–CIV–KING (Sept. 5, 1984)[1]. The Court of Appeals affirmed. *Martin v. Wainwright,* 770 F.2d 918 (11th Cir.1985), *modified, reh'g denied en banc,* 781 F.2d 185 (1986). The United States Supreme Court thereafter denied certiorari. *Martin v. Wainwright,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986).

The Governor signed a death warrant, and Martin's execution was scheduled for November 12, 1986. Martin filed a habeas petition in the Florida Supreme Court contending *inter alia,* that he was incompetent to be executed, and that Florida had no procedure compatible with the new Supreme Court authority of *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). On November 13, 1986, the same day as oral argument in Martin's habeas petition, the Florida Supreme Court issued Rule 3.811 as an emergency rule meant to bring the Florida competency rules in line with *Ford.* The Florida Supreme Court denied the habeas petition, and directed Martin to initiate the sanity proceedings set out in Fla.Stat. § 922.07 if he wished to pursue the claim further. *Martin v. Wainwright,* 497 So.2d 872, 873 (Fla.1986). Under this statute, the Governor is obligated to appoint a panel of three psychiatrists to evaluate the petitioner's competency to be executed. Believing the § 922.07 proceedings were unconstitutional under *Ford, supra,* Martin's counsel advised the Governor that he would not allow Martin to participate in these proceedings. On October 15, 1987 the Governor signed another death warrant for Martin.

The Florida Supreme Court upheld the constitutionality of the Florida competency determination procedures, construing the new rules to allow for judicial consideration of the Governor's ultimate determination. Accordingly, a new § 922.07 proceeding was initiated, and the panel of psychiatrists found Martin competent to be executed. Martin then sought judicial review of this determination. At the hearing in state court, counsel for Martin did not bring witnesses in support because he was unaware the proceeding was to be an evidentiary hearing. After hearing from state's psychiatrist, the state court judge found Martin competent.

---

**1.** Petitioner then alleged the following eight constitutional violations, taken verbatim from this Court's September 5, 1984 denial of Petitioner's first federal petition:

1. Petitioner was denied the fair opportunity to present his defense by the trial court's refusal to appoint an eighth mental health expert witness to examine the petitioner.

2. Petitioner made two custodial statements both of which were involuntary and were obtained in violation of *Miranda v. Arizona* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] and the second statement also violated Petitioner's sixth amendment right to counsel.

3. Petitioner was denied an "individualized sentencing determination" when the trial court excluded evidence at the penalty phase tending to show that the death penalty does not deter the mentally ill, and that it does not deter generally.

4. The prohibition by the trial court against the introduction of jail records at trial denied Petitioner his right to a defense and to present evidence in mitigation of his sentence.

5. Petitioner's sixth amendment right to confrontation was violated during the penalty phase when the trial court ruled a deposition could be read into evidence in rebuttal without the state having shown that the witness was unavailable to testify.

6. Petitioner was denied his right to a jury impartially drawn from a fair cross-section of the community, and he was denied his right to a jury which is neutral with respect to guilt.

7. The Florida Supreme Court had "appeared to deprive" Petitioner of various constitutional rights by the practice of requesting and receiving non-record information in connection with the review of capital cases.

8. The death penalty in Florida has been imposed in an arbitrary and discriminatory manner.

This Court denied all relief on the merits of the listed claims.

Thereafter, Martin filed his second [2] federal habeas petition in this Court, which raised the following issues: (1) whether Florida failed to consider nonstatutory mitigating circumstances as required by *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); (2) whether Martin was incompetent to be executed at the time under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); (3) whether the burden of proving insanity at trial was unconstitutionally shifted to him in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and (4) whether Martin's appellate counsel's failure to raise on appeal Martin's absence from part of the voir dire was ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

This Court denied each of the grounds for relief except for the competency claim, holding that an evidentiary hearing was necessary in light of the constitutionally inadequate state factfinding proceeding that determined Petitioner's sanity. After a three-day evidentiary hearing, this Court on November 10, 1988 held that Petitioner was competent to be executed. Accordingly, the petition for habeas corpus was denied, and the stay of execution was dissolved.

The Eleventh Circuit affirmed this Court's denial of Martin's second writ of habeas. *Martin v. Dugger*, 891 F.2d 807 (11th Cir.1989), *reh'g denied en banc*, 898 F.2d 160 (1990). The Supreme Court again denied certiorari. *Martin v. Dugger*, —— U.S. ——, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990).

In May 1991, Martin filed an original habeas petition in the Supreme Court of Florida. The Court denied the petition without opinion. *Martin v. Singletary*, 583 So.2d 1036 (Fla.1991).

On April 7, 1992, the Governor of the State of Florida signed a fourth death warrant for Martin. On May 4, 1992, two days

before the scheduled execution, Martin filed a habeas petition in the Florida Supreme Court challenging the "especially heinous, atrocious or cruel" jury instruction given at his penalty phase. He also filed a Fla.R.Crim.P. 3.850 motion to vacate his sentence in the Fifteenth Judicial Circuit alleging that (1) operation of law restricted his trial counsel's efforts to develop and present nonstatutory mitigating evidence in violation of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); and (2) Martin was denied the competent assistance of a crucial mental health expert under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

The trial court denied the Rule 3.850 motion as an "abuse of the procedure" as defined and established by state procedural rule. *State v. Martin*, No. 77–1675 (May 5, 1992) (Stewart, J.). The Florida Supreme Court affirmed this ruling, and in the same order, denied Martin's habeas petition and motion for a stay of execution. *Martin v. Chiles*, 599 So.2d 121 (1992). The Florida Supreme Court held that all of Martin's claims were subject to procedural bars.

The instant petition for writ of habeas corpus was then filed in this Court.

## III. THE THIRD FEDERAL HABEAS PETITION

In this habeas petition, Martin brings each of the arguments raised and exhausted on May 5, 1992 in state court, specifically:

1. The sentencer's consideration of the "especially heinous, atrocious, or cruel" aggravating factor at the penalty phase violated *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and the Eighth and Fourteenth Amendments (the *"Maynard* claim"); and

2. The operation of Florida law restricted Martin's trial counsel's efforts to develop and present nonstatutory mitigating evidence in violation of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347

---

**2.** Martin previously filed an unexhausted petition, which this Court dismissed on October 28,

1987 without reaching the merits. *See Martin v. Dugger*, No. 8785–CIV–KING.

(1987), and the Six, Eighth, and Fourteenth Amendments (the *"Hitchcock* claim");

3. Martin was denied the competent assistance of a crucial mental health expert under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (the *"Ake* claim"); and

4. Martin's trial and sentencing proceedings were constitutionally defective due to the prosecution's deliberate and knowing presentation and use of false evidence and argument, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (the *"Brady/Giglio* claim").

The merits of these claims are not properly before the Court unless Martin can overcome the several procedural bars that stand in the way of this Court's substantive review. There are three relevant doctrines that place limitations on this federal habeas Court's review: (1) abuse of the writ; (2) retroactivity under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); and (3) procedural default. If Petitioner cannot avoid any of these bars with respect to a claim, the Court's inquiry is at an end.

▮ The interplay between these doctrines has been a source of some conflict in this Circuit. A majority of the Eleventh Circuit sitting *en banc* found that abuse of the writ claims should be analyzed before reaching *Teague* issues. *Moore v. Zant,* 885 F.2d 1497 (11th Cir.1989) *(en banc).* In *Moore,* five judges construed the Supreme Court's remand of the previous panel decision in light of *Teague* to require analysis of retroactivity issues *ab initio.* Similarly, in *Johnson v. Singletary,* 938 F.2d 1166 (11th Cir.1991), the *en banc* court did not settle on a single approach to analyzing procedural default in the context of abuse of the writ. Chief Judge Tjoflat

suggested in a separate Opinion that the court should inquire into abuse of the writ before addressing procedural default. *Id.* at 1188 n. 4 ("with the rare claim that is barred both by the abuse of the writ doctrine and the state procedural default doctrine, we must, contrary to the court's approach today, avoid exacting an unnecessary price on the state's criminal justice system by analyzing whether to excuse the abuse of the writ first"). The majority acknowledged that the approach may be proper as a general proposition. *Id.* at 1173 n. 12.

This Court concludes abuse of the writ is a threshold issue.

### A. *Abuse of the Writ* [3]

▮ The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus. The doctrine is principally intended to promote the finality of criminal proceedings by requiring petitioners to include all of their claims in a single habeas petition in the federal district court. *See McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991) (doctrine necessary because "[p]erpetual disrespect for the finality of convictions disparages the entire criminal justice system"); *Kuhlmann v. Wilson,* 477 U.S. 436, 451–52, 106 S.Ct. 2616, 2625–26, 91 L.Ed.2d 364 (1986); *Moore v. Zant,* 885 F.2d at 1504.

Although the concept of "res judicata" does not apply to habeas proceedings, *Sanders v. U.S.,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), Rule 9(b) of the Rules Governing § 2254 Cases presents a bar to new grounds of relief raised in subsequent petitions. The Rule provides:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on

---

**3.** The state has adequately plead abuse of the writ. The state has the burden of raising abuse of the writ, *McCleskey v. Zant,* 111 S.Ct. at 1470, and meets this burden if, "with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first

time, and alleges that petitioner has abused the writ." *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). The burden then shifts to the petitioner to disprove abuse. *Id.*

the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Thus, the Rule purposefully does not provide a definition of "abuse of the writ," which was left to the courts, and instead allows dismissal based on "abuse" grounds alone, on equitable principles. *See McCleskey v. Zant*, 111 S.Ct. at 1465.

The Eleventh Circuit divides Rule 9(b) successive petitions into two categories:

> A petition that raises a claim already adjudicated through a prior petition is a "successive petition." In contrast, a petition that raises grounds for relief not raised in the prior petition is analyzed as an "abuse of the writ."

*Gunn v. Newsome*, 881 F.2d 949, 955 n. 6 (11th Cir.1989) (*en banc*).

■ It is plain that all four of Petitioner's claims for relief here are either abusive or successive. Martin failed to include the *Maynard* challenge in either of his prior federal habeas petitions. Petitioner raised a variant of the *Hitchcock* claim in his second petition. *See Martin v. Dugger*, 686 F.Supp. 1523 at 1527–28 (S.D.Fla.1988). Finally, the *Ake* claim was raised in 1984. *See Martin*, 84–8426–CIV–KING (Sept. 5, 1984 at 3); *aff'd*, 770 F.2d 918, 933 (11th Cir.1985).[4] The Brady claim will be discussed hereafter.

The Court now turns to the showing required to overcome this bar.

### 1. Cause and Prejudice

A year ago, the Supreme Court adopted a new standard for dealing with abuse of the writ claims. In *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Court imported the "cause and prejudice" standard from the area of state procedural defaults, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), into the law of abuse of the writ. The Court held that the *Sykes* standard "applies to determine if there has

been an abuse of the writ through excusable neglect." *McCleskey*, 111 S.Ct. at 1470.

■ As in the law of procedural default, "cause" is not precisely defined, but ordinarily requires a showing that "some objective factor external to the defense impeded counsel's efforts" to construct or raise a claim. *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). The Supreme Court has found objective factors that constitute cause include (1) interference by officials that makes compliance impracticable, (2) a showing that the factual or legal basis for a claim was not reasonably available to counsel, and (3) constitutionally ineffective assistance of counsel. *See id.* at 486–88, 106 S.Ct. at 2644–46. "Prejudice" means a reasonable probability that the result of the proceeding would have been different but for the constitutional defect. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

### 2. Fundamental Miscarriage of Justice Exception

■ The abuse inquiry does not end there, however. In adopting the cause and prejudice standard, the Supreme Court expressly preserved the fundamental miscarriage of justice exception from earlier jurisprudence. *See McCleskey*, 111 S.Ct. at 1470. In certain circumstances, a federal court has the equitable power to consider an issue notwithstanding the existence of a procedural bar. A federal court may do so "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The Supreme Court has also recognized that one may be actually innocent of the death penalty. *See Smith v. Murray*, 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). The purpose of this exception is to avoid a fundamental miscarriage of justice that would result from failure to consider the procedurally defaulted habeas claim.

---

**4.** Martin's first petition in this Court was filed before *Ake* was decided in 1985. The Eleventh Circuit recognized the claim as falling under *Ake,* and resolved it under that precedent. *See Martin,* 770 F.2d at 934.

*Carrier,* 477 U.S. at 495–96, 106 S.Ct. at 2649–50.

Recently, a split among the Circuits has developed concerning what it means to be "actually innocent" of the death penalty.

The Eleventh Circuit, sitting *en banc,* sharply divided on the issue. A six-judge majority held that a petitioner makes a colorable showing that he or she is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates all of the statutory aggravating factors found to be present by the sentencing body. *See Johnson v. Singletary,* 938 F.2d 1166, 1183 (11th Cir.1991) (certiorari pending). In other words, a petitioner must show that, but for the alleged constitutional error, the sentencing body could not have found any aggravating factors and thus the petitioner was *ineligible* for the death penalty. *Id.* If, however, the petitioner became eligible for the imposition of a death sentence (because a statutory aggravating factor was present), then the fact that a constitutional error may have swayed the sentencing body to exercise its discretion to impose a death sentence is insufficient to establish actual innocence of the death penalty.

Five judges dissented from the "actual innocence" portion of the Opinion. Chief Judge Tjoflat agreed that "ineligibility" was a proper test, but was of the view that the majority had improperly ignored state law in applying the standard; he held that under Florida law the petitioner would have been ineligible for the death penalty despite the existence of a statutory aggravating factor and hence that the petition should have been granted. Four judges were of the view that a petitioner is actually innocent of the death penalty if the alleged constitutional error resulted in a factually inaccurate sentencing and the inaccuracies are so significant that the result would have been different had the true facts been presented. *See id.* at 1200 (Anderson, J., concurring and dissenting).

A Fifth Circuit panel has adopted a similar test to the Eleventh Circuit. The Court held that a petitioner is not actually innocent of the death penalty unless he demon-strates, under all the evidence that was and arguably should have been presented, that the jury would not have been authorized to sentence him to death as a matter of law. *See Sawyer v. Whitley,* 945 F.2d 812, 820, 822 (5th Cir.), *cert. granted,* —— U.S. ——, 112 S.Ct. 434, 116 L.Ed.2d 453 (1991). The Fifth Circuit applied this standard to a death sentence imposed under Louisiana law, which authorizes the imposition of the death penalty only upon a jury finding, beyond a reasonable doubt, that at least one statutory aggravating factor was present. *Id.* at 822. The Court concluded that the petitioner was not actually innocent because he could not proffer evidence that would lead a rational trier of fact to entertain a reasonable doubt concerning the presence of *all* of the aggravating factors that were found. *Id.* at 823–24.

The Eighth and Ninth Circuits have adopted a different approach. Under the test adopted by these two circuits, a petitioner is actually innocent of the death penalty "if the federal constitutional error alleged probably resulted in a verdict of death against one whom the jury would otherwise have sentenced to death." *Deutscher v. Whitley,* 946 F.2d 1443, 1444 (9th Cir.1991); *Stokes v. Armontrout,* 893 F.2d 152, 156 (8th Cir.1989); *Smith v. Armontrout,* 888 F.2d 530, 545 (8th Cir. 1989). The Ninth Circuit criticized the Eleventh Circuit's approach in *Johnson,* stating that it "offends the Constitution and fails to ·comport with Supreme Court precedent." *Deutscher,* 946 F.2d at 1445.

The difference in the two approaches has been aptly summarized by the Ninth Circuit. The Eighth and Ninth Circuits ask whether a defendant *would* not have been sentenced to death in the absence of the alleged constitutional error, while the Fifth and Eleventh Circuits ask whether the defendant *could* not have been sentenced to death.

This split in the circuits has not gone unnoticed by the Supreme Court. It recently decided to review the Fifth Circuit's decision in *Sawyer.* Oral argument was

heard on February 25, 1992.[5] 60 U.S.L.W. 3531 (Feb. 4, 1992). No decision has yet been handed down.

■ This Court is not at liberty to evaluate the approaches and settle upon one it favors, for the Eleventh Circuit has spoken. This Court is bound to review Petitioner's abusive claims under the recent standard set out by the court *en banc* in *Johnson.* Nor may this Court stay Martin's execution to await the outcome *Sawyer.* In *Ritter v. Thigpen,* 828 F.2d 662 (11th Cir.1987), the petitioner sought a stay of execution on the eve of his execution, based on the Supreme Court's grant of certiorari in the Fifth Circuit case of *Lowenfield v. Phelps,* 817 F.2d 285 (5th Cir.1987). Petitioner argued that the Supreme Court might find constitutional error in two of the aggravating circumstances that applied equally in his case. The *Ritter* court held that a grant of certiorari did not create "new" law that would excuse an abuse of the writ, and found that petitioner could not be actually innocent of the death penalty even if *Lowenfield* were to be eventually decided in his favor. *Id.* at 665–66. The Eleventh Circuit therefore declined to issue a stay.

### B. *The Abusive/Successive Claims*

The Court cannot reach the merits of any of Petitioner's four claims. None of the constitutional violations alleged would render Martin "ineligible" for the death penalty.

#### 1. The *Maynard* Claim

It is necessary to set out Martin's challenge to his penalty phase jury instructions in some detail, both because it has not been raised here before, and because it represents his most compelling equitable argument for a stay.

Martin claims that the trial judge's instruction on the "especially heinous, atrocious, or cruel" aggravating factor is unconstitutional because it is vague, illusory and unguided in violation of the eighth amendment. The charge in Martin's penalty phase on the "especially heinous" aggravator was as follows:

> Now, the aggravating circumstances which you may consider are limited to such of the following as may be established by the evidence:
>
> \* \* \* \* \* \*
>
> That the crime for which the defendant is be sentenced was especially heinous, atrocious or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means designed to inflict a high degree of pain, utter indifference to or enjoyment of the suffering of others; pitiless.

R. at 4491, 4493.

In *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the Supreme Court held that Oklahoma's jury charge, identical in wording to Florida's charge, left the jury unchanneled discretion to make an arbitrary and capricious decision. The Court has also found constitutional error in Mississippi's "especially heinous" charge. *See Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 1451 n. 1, 108 L.Ed.2d 725 (Blackmun, J., concurring and dissenting); *Shell v. Mississippi,* 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) (*per curiam* ).[6]

In addition, the Supreme Court recently granted certiorari in *Sochor v. Florida,* —

---

**5.** The precise question presented for review in *Sawyer v. Whitely* is:

> What is the appropriate standard to be applied when determining whether "fundamental miscarriage of justice" exception … will allow for consideration of claims presented in successor habeas corpus petition? Should focus be strictly on habeas petitioner's legalistic "eligibility" to be sentenced to death, and fail to require fact-based examination of accuracy of jury's decision, including whether 1) jury was presented with false facts, and 2) jury was not presented with true, mitigating facts?

60 U.S.L.W. 3531 (Feb. 4, 1992).

**6.** The *Shell* Court was reviewing the "especially heinous" formulation, with the following limiting definition given: "the word heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others." *See Shell,* 111 S.Ct. at 313 (Marshall, J., concurring).

U.S. ——, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991) in order to review the application of Florida's "especially heinous" jury charge. Oral argument was heard on March 2, 1992. *See* 60 U.S.L.W. 3700 (April 14, 1992). Petitioner argues that a decision in *Sochor* would necessarily impact upon Martin's sentence in this case.[7] Martin also points out that the Supreme Court recently stayed the execution of a Florida habeas petitioner in order to consider a certiorari petition that raises virtually the same issue. *See Kennedy v. Singletary,* —— U.S. ——, 112 S.Ct. 1779, 118 L.Ed.2d 533 (1992).

Martin would rely on these authorities and recent Supreme Court proceedings in requesting a stay, and invalidation of his sentence.

■ By any formulation, however, Martin cannot show cause for failing to include his *Maynard* challenge in an earlier petition. No factor external to the defense prevented the Petitioner from litigating this claim in 1984 or 1987. *See e.g., Woods v. Whitley,* 933 F.2d 321, 323–24 (5th Cir. 1991) (application of cause standard in abuse of writ context); *Cuevas v. Collins,* 932 F.2d 1078, 1082 (5th Cir.1991) (same). The tools necessary to construct such a claim were at hand. *See Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (holding Georgia's jury charge on "outrageously or wantonly vile, horrible and inhuman" aggravator uncon-

stitutionally unlimited); *see also Stringer v. Black,* —— U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (for *Teague* purposes, *Maynard* in 1988 did not create new rule because *Godfrey* previously laid the foundation for this precise type of claim). Nor can the failure to raise the claim be attributed to constitutionally inadequate counsel. *See Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2566–68, 115 L.Ed.2d 640 (1991) (Six Amendment right to counsel does not attach to post-conviction proceedings). Because Martin cannot satisfy the cause prong of *McCleskey,* the Court does not reach the issue of actual prejudice. *See Engle v. Isaac,* 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982).

Therefore, this claim for relief must fall within the "actual innocence" exception to abuse of the writ doctrine. Petitioner cannot satisfy the standard set out in *Johnson:*

> A petitioner may make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body. That is, but for the alleged constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the al-

---

7. At oral argument in this Court, the state argued that *Sochor* would not effect Martin's sentence. Counsel noted that the Florida Supreme Court had affirmed the trial court's finding of the "especially heinous" aggravating factor in *Martin.* As sufficient evidence supported the finding, it would not be called into question by any different ruling on the merits of Sochor's claim.

Counsel for Petitioner responded that this argument depends on the assumption that the trial court judge is the actual sentencer in the Florida scheme, and pointed out that this precise issue is itself presented by Sochor's claim. Counsel also argued that the *Sochor* case might invalidate Florida's "especially heinous" jury charge as unconstitutionally vague and unlimited, as well as establish an appropriate harmless error analysis requirement.

A review of petitioner's brief in *Sochor* supports Petitioner's argument. Sochor summa-

rized his argument on the "especially heinous" factor as follows:

> The state court's application of the "especially heinous, atrocious, or cruel" aggravating circumstance rendered Mr. Sochor's death sentence unconstitutional. The instruction used at bar violated the Eighth Amendment under the teachings of [*Maynard* ] so that remand is required under [*Shell* ] if Florida is treated as a jury sentencing state. If Florida is treated as a judge sentencing state, remand is required under *Walton v. Arizona* [497 U.S. 639], 110 S.Ct. 3047 [111 L.Ed.2d 511] (1990) because Florida's use of the sentencing circumstance has long deviated from the narrow construction approved in *Proffitt v. Florida,* 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913] (1976) ... and the supreme court did not ... conduct a harmless error analysis.

*Sochor v. Florida,* No. 91–5843 (Brief for Pet. at 10) (Lexis: Genfed–Briefs).

leged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is *ineligible* for the death penalty.

938 F.2d at 1183 (emphasis in original).

The trial court found five aggravating factors: (1) the felony was committed while the defendant was under sentence of imprisonment; (2) the defendant was previously convicted of felonies involving the use or threat of violence to the person; (3) the felony was committed while defendant was engaged in flight after committing a robbery, rape, and while engaged in kidnapping; (4) the felony was committed for the purpose of avoiding or preventing a lawful arrest; and (5) the felony was especially heinous, atrocious or cruel. *See Findings and Sentence*, Nov. 13, 1978, R. at 4833–34.

■ Even if the last aggravator above is struck, Martin remains eligible for the death penalty based upon any one of the four valid factors. Martin's sentence was affirmed by the Supreme Court of Florida. *See Martin v. State*, 420 So.2d 583 (Fla. 1982). Thus, the miscarriage of justice exception is foreclosed.

### 2. The Hitchcock Claim

■ Martin advances a variant of the *Hitchcock* claim he brought here in 1987. This Court summarized Petitioner's argument on this claim in his second petition as follows:

> The thrust of petitioner's argument is that seen from the perspective of the entire trial, a reasonable juror could believe that he or she need not have considered the proffered nonstatutory mitigating circumstances. Petitioner contends that the jurors were "conditioned" from the beginning to the end of the trial to believe that they were bound to consider the enumerated statutory factors only. Finally, petitioner argues that the

trial judges instructions to the jury, stating that they could take into account *any* nonstatutory mitigating factors they found to be mitigating, could in no measure cure or compensate for all the previous constitutional infirmities.

*Martin*, 686 F.Supp. at 1536. In the instant petition, Martin approaches the issue from trial counsel's point of view. Petitioner argues that operation of state law existing at the time of trial had a chilling effect on counsel's ability to prepare and present all of the nonstatutory mitigating evidence. In a recent affidavit, Martin's trial counsel states that "because I was operating under the law then in effect, I did not develop or ask the mental health experts at the time about nonstatutory psychological information, and I did not develop, investigate, or present other nonstatutory mitigating circumstances and evidence from other sources." Pet. at 15. Although trial counsel convinced the court to give an instruction permitting consideration of nonstatutory mitigating evidence— and in fact presented such evidence, *see* 686 F.Supp. at 1538–40—counsel states that he did not know he was going to be able to present any nonstatutory mitigating evidence until just before the penalty phase actually began. If the law had not constrained him, trial counsel states that he would have developed and presented much of the nonstatutory mitigating evidence subsequently detailed by collateral counsel.

The court finds that instant *Hitchcock* claim is nearly identical to the claim previously presented. Although the nuances may differ, the substance of the argument remains the same. As Martin has failed to raise new or different grounds for relief, the claim is successive.[8] *See Collins v. Zant*, 892 F.2d 1502, 1506 (11th Cir.1990). Petitioner must therefore demonstrate that he is "actually innocent" of the death penalty under the fundamental miscarriage of justice exception. *Id.*

---

**8.** Even if the Court found that the claim was abusive, Martin cannot show cause for his failure to bring the claim in an earlier petition. No factor external to the defense prevented Petitioner from including the instant variation of his *Hitchcock* claim in his second petition. *See*

*Carrier*, 477 U.S. at 492, 106 S.Ct. at 2647. As noted above, ineffective assistance of collateral counsel may not serve as cause to excuse abuse of the writ. *See Coleman*, 111 S.Ct. 2546, 2566–68 (1991).

It is clear that *Johnson* again bars this Court from proceeding further in the analysis. Nonstatutory mitigating evidence, even if compelling, would not render a petitioner *ineligible* to receive the death penalty under the Eleventh Circuit's "actually innocent" formulation. *See Johnson*, 938 F.2d at 1183.

### 3. The Ake Claim

■ Petitioner renews his claim first asserted in the 1984 petitioner that he was denied the assistance of a crucial mental health expert. This argument was reviewed by the Eleventh Circuit as a claim under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and denied. *See Martin*, 770 F.2d at 933–35. In the instant petition, Martin contends that "[e]ven though seven experts were appointed or authorized by the court to evaluate Mr. Martin's mental status, *six of the seven experts* relied critically upon the *seventh* expert—the neurologist—to rule out the possibility that Mr. Martin suffered from organic brain damage which made him so impaired that he should not be held fully accountable for his actions." Pet. at 55. Martin has subsequently adduced a wealth of evidence critical of the neurologist's analysis and findings. *See* Pet. at 64–72. These studies, Martin argues, cast doubt on the competence of Martin's pivotal mental health expert.

Martin's motion for the appointment of an eighth doctor at trial, Dr. Blau, was denied by the trial court. Martin claims that Dr. Blau's testimony would have been consistent with the post-conviction expert analyses Martin's of mental status.

Dr. Blau's testimony, however, only would have supported Martin's argument on *mitigation,* and would have been at variance with several other medical expert's testimony at trial. It does not undermine any of the aggravating circumstances found in this case, and therefore does not render Martin *ineligible* for the death penalty. *Johnson,* 938 F.2d at 1181. Accordingly, the Court does not reach the merits of the *Ake* claim.

### 4. The Brady/Giglio Claims

■ The petitioner moves to amend his petition to include a newly discovered claim based on *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Martin in his Petition asserts that he has discovered that the State knowingly presented false evidence at trial and knowingly suppressed exculpatory evidence, thereby depriving him of his due process rights. Amend. to Pet. at 1.

This week, in fact the day before Martin filed this petition, a letter was written to Governor Chiles by Jack Scarola, an Assistant State Attorney who was present when Martin confessed in 1977. Scarola testified at Martin's original trial regarding Petitioner's competency at the time of his confession. Scarola's letter of May 5 states that the materials he has recently reviewed

> are entirely consistent with the subjective impressions I formed on the day I was called in to assist law enforcement with Mr. Martin's interrogation. He clutched at his body in the same way. He rocked compulsively in the same way. He exhibited the same obsessive thought patterns and the same overwhelming preoccupation with distorted religious themes.

> . . . . .

> [T]here can be no reasonable doubt that Nollie Martin's competence is so grossly diminished that as a society we cannot hold him culpable to the same degree as would otherwise be justified.

*Id.*

Initially the Court must address whether this claim, like the others, constitutes an abuse of the writ. Petitioner did not raise the *Brady/Giglio* claim on either of his previous petitions. Therefore, it falls within the definition of abuse of the writ.

Turning to the cause and prejudice analysis the Court finds that Petitioner has not shown excusable neglect for not bringing the claim before. *See McCleskey*, 111 S.Ct. at 1470. One of the objective factors that the Supreme Court has said qualifies as

cause is that the factual or legal basis for a claim was not reasonably available to counsel. *Murray v. Carrier*, 477 U.S. at 486, 106 S.Ct. at 2644 (citing *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984)). Petitioner has not demonstrated that the factual basis for this claim was not available to him when he filed his other petitions. His claim is based on the discovery of a letter written on May 5, 1992, which allegedly is in direct conflict with Scarola's trial testimony.

The state argues that Petitioner did have access to this information before because he cross-examined Scarola, and could have questioned Scarola at any later date. This Court agrees. Collateral counsel was aware that Scarola took the confession from Martin, was a member of the state prosecution team, *and* testified at the original trial in 1978 about his observations of Martin. Collateral counsel has not attempted to discover any *Brady* or *Giglio* violations with respect to this witness in general—or with respect to Scarola's original observations of Martin in particular—in the intervening years between the conviction and Scarola's letter of May 5, 1992. Certainly, no external factor prevented counsel from undertaking this investigation. *See McCleskey*, 111 S.Ct. at 1472. Accordingly, this Court does not consider whether Martin would be prejudiced by his inability to raise his *Brady/Giglio* claim at this late. *Id.*

 Nor may Petitioner avail of the miscarriage of justice exception. After a review of Scarola's trial testimony and the letter of May 5, 1992, it is clear that Scarola did not withhold any facts at the time of trial. His letter states that after he read the subsequently-prepared "medical and psychiatric history" of Martin and "watched a videotape of the interview with him which was part of the clemency application," Scarola noted the same behavior as the day he interrogated Martin. Scarola's

letter reveals no new facts. It merely states that after subsequently reviewing additional materials, Scarola has formed "subjective impressions" consistent with his initial observations of Martin. At trial, Scarola in fact testified that he thought Martin was "emotionally disturbed." R. at 3529. His views were subject to thorough and extensive cross-examination.[9]

Thus, the Court concludes that Scarola's present subjective impressions, to the extent that they vary at all from his trial testimony, would not effect the outcome of the trial in any way.

The Scarola letter does not demonstrate that an "actually innocent" defendant was convicted or sentenced to death.

### C. *Conclusion and Order*

Consistent with this Opinion, the Court

ORDERS, ADJUDGES AND DECREES that Petitioner Nollie Lee Martin's Third Petition for Habeas Corpus be, and the same hereby is DENIED. The Court further

ORDERS, ADJUDGES AND DECREES that Petitioner Nollie Lee Martin's motion for leave to amend his petition to include the *Brady/Giglio* claim is GRANTED. The Court further

ORDERS, ADJUDGES AND DECREES that Petitioner Nollie Lee Martin's Stay of Execution entered Tuesday, May 5, 1992 be and the same will remain in full force and effect until Monday, May 11, 1992 at 5:00 p.m. at which time it shall automatically dissolve and have no further legal effect.

DONE AND ORDERED.

---

**9.** For example, trial counsel's re-cross was limited to a single issue:

> [Defense counsel]: Just one question in that regard then. I will ask you again, do you feel

that everything about his manner clearly highlighted the fact that he was having emotional difficulty?
[Scarola]: Yes, sir.